BALLY TOTAL FITNESS CORPORA-TION f/k/a Health & Tennis Corporation of America, successor by merger to Dallas Health Clubs, Inc. d/b/a Bally's, Petitioner,

v.

Keith JACKSON, individually and on behalf of all others similarly situated, and Freddy Mack, Respondents.

No. 99–1002.

Supreme Court of Texas.

Argued Sept. 6, 2000.

Decided April 19, 2001.

Rehearing Overruled Sept. 27, 2001.

Sharon E. Callaway, Thomas H. Crofts, Jr., Crofts Callaway & Jefferson, Ricardo G. Cedillo, Davis Cedillo & Mendoza, Keith E. Kaiser, A. Michael Ferrill, Cox & Smith, San Antonio, Laurence H. Tribe, Cambridge, MA, for petitioner.

Barry Snell, David Claybourne Snell, Bayne Snell & Krause, San Antonio, for respondent.

Justice O'NEILL delivered the opinion of the Court, joined by Chief Justice PHILLIPS, Justice ENOCH, Justice BAKER, and Justice HANKINSON.

A party may not appeal an interlocutory order unless authorized by statute. *Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985) (per curiam). Section 51.014(a)(3) of the Texas Civil Practice and

Remedies Code allows a party to appeal an interlocutory order that certifies or refuses to certify a class action. TEX. CIV. PRAC. & REM.CODE § 51.014(a)(3). In *De Los Santos v. Occidental Chemical Corp.*, 933 S.W.2d 493, 495 (Tex.1996), we held that an interlocutory order that changed a certified class from opt-out to mandatory and created conflict between the class and its counsel altered the fundamental nature of the class and was appealable under the statute.

In this case the trial court certified a class, but that order is not the subject of this appeal. Rather, the defendant, Bally Total Fitness, seeks to appeal three subsequent interlocutory orders. The first order granted a partial summary judgment holding that Bally had charged certain customers an illegal time-price differential. The other two orders overruled Bally's two motions to decertify the class. We must decide whether the combined effect of these orders meets the *De Los Santos* test for interlocutory-appeal jurisdiction. We hold that it does not. Whether or not the trial court abused its discretion in issuing the orders Bally seeks to appeal, which we do not decide, those orders do not alter the fundamental nature of the class as *De Los Santos* requires. Accordingly, we affirm the court of appeals' dismissal for want of jurisdiction.

I

Keith Jackson filed this class action against Bally claiming that it charged certain customers amounts that exceeded the maximum time-price differential permitted by the Texas Consumer Credit Code. *See* TEX.REV.CIV. STAT. art. 5069–6.02(9)(a) (repealed) (current version at TEX. FIN.CODE § 345.055(a)). Jackson also claimed that Bally was liable under the Texas Deceptive Trade Practices Act for unconscionable conduct and for representing that an agreement conferred rights and obligations prohibited by law. *See* TEX. BUS. & COMM.CODE §§ 17.50(a)(3), 17.46(b)(12). In 1995, the trial court certified an opt-out class under Rule 42(b)(4) of the Texas Rules of Civil Procedure. Bally appealed the certification order, but the court of appeals affirmed the trial court. *See Health & Tennis Corp. of Am. v. Jackson*, 928 S.W.2d 583, 592 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.).

Discovery disputes concerning potential class membership arose after the certification, delaying the delivery of notice.[1] As a result, notice had not been sent when Jackson moved for partial summary judgment on the liability issue. The trial court granted Jackson's motion and ruled that Bally had violated the Texas Consumer Credit Code and the DTPA. Bally then moved to decertify the class, complaining that the partial summary judgment should not have preceded notice to the class members.[2] The trial court issued two orders denying the motions.

Bally filed an appeal and a petition for writ of mandamus with the court of appeals. The writ of mandamus was denied, and the appeal proceeded. After oral argument, the court of appeals dismissed the interlocutory appeal for want of jurisdiction. 2 S.W.3d 327. Bally filed both a

---

1. After these disputes were resolved and while the case was pending before this Court, the trial court approved a form notice but delayed its delivery until June 1, 2000. We granted Bally's motion to stay delivery of notice pending resolution in this Court. 43 TEX. SUP.CT. J. 767 (May 24, 2000).

2. Bally petitioned both the court of appeals and this Court for a writ of mandamus to prevent the rendition of summary judgment before notice was sent to potential class members, but was unsuccessful. 2 S.W.3d 327, 329 n. 2.

petition for writ of mandamus and a petition for review in this Court. We denied the writ of mandamus, 43 Tex. Sup.Ct. J. 609 (April 13, 2000), but granted the petition for review to consider whether the court of appeals correctly decided its jurisdiction. *See Long v. Humble Oil & Refining Co.,* 380 S.W.2d 554, 555 (Tex.1964) (holding that this Court has jurisdiction to review whether the court of appeals had jurisdiction).

## II

■ By statute, a party may appeal an interlocutory order that certifies or refuses to certify a class action. Tex. Civ. Prac. & Rem.Code § 51.014(a)(3). The three interlocutory orders at issue here do not expressly certify or refuse to certify a class. Rather, one grants a partial summary judgment and the other two refuse to decertify the class. Bally concedes this point, but argues that *De Los Santos* broadened the statute's reach so that an appeal lies from any order that changes the fundamental nature of the class. Bally offers several reasons why the trial court's orders altered the class's fundamental nature. Before addressing Bally's arguments, we examine the facts presented in *De Los Santos.*

In *De Los Santos,* plaintiff Grant filed suit against OxyChem and others for injuries caused by a butadiene plant's accidental chemical release. Other plaintiffs intervened and the defendants, facing hundreds of personal injury suits, successfully moved the court to certify a mandatory class over the plaintiffs' vigorous objections. Grant and others appealed the certification, but a group of over 500 plaintiffs represented by attorney Gonzalez did not join in the appeal even though they had initially opposed the certification. While appeals of the certification order were pending, the case was trans-

ferred to another court. The new court granted the plaintiffs' motion to reconsider and certified the class as an opt-out class. The Gonzalez plaintiffs and others opted out, and the Grant plaintiffs proceeded to trial.

The jury found defendants to be negligent and grossly negligent, and awarded actual damages. Before proceeding to the punitive damages phase of the trial, the defendants offered to settle for $65,700,000 provided that a mandatory class was certified and approved by the trial court. The class counsel, who had previously opposed a mandatory class, accepted and joined the defendants in convincing the court to modify the class by changing it from an opt-out class to a mandatory settlement class. This was done over the objection of those plaintiffs who had rejected class counsel's representation by opting out and not participating in the trial.

The court of appeals dismissed the objecting plaintiffs' appeal for want of jurisdiction, relying upon *Pierce Mortuary* for the proposition that an order changing the size of a class merely modifies a certification order and does not qualify as an "order certifying or refusing to certify a class." *See Pierce Mortuary Colleges, Inc. v. Bjerke,* 841 S.W.2d 878, 880–81 (Tex. App.—Dallas 1992, writ denied). But we held that the interlocutory order at issue in *De Los Santos* did more than simply change the size of the class: "[c]hanging a class from opt-out to mandatory does not simply enlarge its membership; it alters the fundamental nature of the class." 933 S.W.2d at 495. In reaching our decision we voiced concern about conflicts that may arise between the class and its counsel, particularly with regard to settlement. We noted that "[t]o deny interlocutory appeal in this situation, when class counsel agrees to a fundamental restructuring of the class to which they were once opposed,

aggravates those concerns." *Id.; see also Gen. Motors Corp. v. Bloyed,* 916 S.W.2d 949, 953–54 (Tex.1996) (noting "special concerns" raised by settlement classes).

Our narrow ruling in *De Los Santos* comports with the Legislature's intent that section 51.014 be strictly construed as " 'a narrow exception to the general rule that only final judgments and orders are appealable.' " *Montgomery County v. Fuqua,* 22 S.W.3d 662, 665 (Tex.App.—Beaumont 2000, pet. denied) (quoting *Tex. Dep't of Transp. v. City of Sunset Valley,* 8 S.W.3d 727, 730 (Tex.App.—Austin 1999, no pet.)); *America Online, Inc. v. Williams,* 958 S.W.2d 268, 271 (Tex.App.—Houston [14th Dist.] 1997, no pet.). In *Stary v. DeBord,* for example, we rejected the argument that a corporate-shareholder derivative claim, even though closely resembling a class action, fit within the statutory language. 967 S.W.2d 352, 353–54 (Tex.1998) (per curiam). Similarly, the statute does not authorize an appeal of an order merely enlarging the size of a class, *Pierce Mortuary,* 841 S.W.2d at 880–81, or an order modifying a class's definition, *Koch Gathering Systems, Inc. v. Harms,* 946 S.W.2d 453, 455–56 (Tex.App.—Corpus Christi 1997, writ denied).

■ Nevertheless, Bally argues that we should extend *De Los Santos* to cover an interlocutory order that makes it less likely that class members will opt out. According to Bally, because the partial summary judgment resolved liability in the plaintiffs' favor, the potential class members' incentives to opt out have been virtually eliminated; thus the class, while nominally an opt-out class, is actually a *de facto* mandatory class. Bally also argues that the pre-notice partial summary judgment invites impermissible one-way intervention. "One-way intervention" refers to the practice of permitting class members to intervene after the court has decided the

merits in their favor, although they would not have been bound by an adverse decision. *See* 28 U.S.C. app. at 604 (1988). According to Bally, the Advisory Committee drafters intended Rule 23(c)(3) of the Federal Rules of Civil Procedure to eliminate this practice by allowing a judgment to bind only class members who have received notice and not opted out: "Under proposed subdivision (c)(3), one-way intervention is excluded; the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class. . . ." *Id.* The corresponding Texas class-action rule, Rule 42(c)(3), tracks the language of Federal Rule 23(c)(3). TEX.R. CIV. P. 42(c)(3). From this, Bally infers that Rule 42(c)(3) also prohibits one-way intervention. Bally contends that the trial court's pre-notice partial summary judgment effectively permits one-way intervention and violates Rule 42(c)(3). Bally claims that allowing one-way intervention also violates the Texas Constitution's open courts clause and the federal and state constitutions' due process and equal protection clauses. Bally concludes that these alleged violations implicate the concerns that underlay our *De Los Santos* decision.

The crux of Bally's arguments is that *De Los Santos* authorizes appeals whenever interlocutory orders create incentives for class members to stay in an opt-out class. At the outset, we question Bally's underlying premise that the trial court's partial summary judgment implicates one-way intervention because it will cause potential class members to remain in the class. Bally itself acknowledges that "absent class members who opt out could recover seventeen times more damages than by staying in the class." This is due to the $100,000 penalties cap that applies to class action litigation. *Compare* TEX. FIN.CODE

§ 349.001 (allowing a plaintiff in an individual action to recover twice the total time-price differential contracted for as a penalty, without regard to the size of his actual damages) *with* TEX. FIN.CODE § 349.403 (limiting members of a plaintiff class to actual damages plus their proportionate share of the maximum class action penalty of $100,000). The class notice that the trial court has approved notifies the class members accordingly: "Because Texas law limits the amount of penalty which may be awarded in a class action, you may be able to receive a greater recovery if you exclude yourself from the class." Thus, contrary to Bally's argument, it does not appear that absent class members' incentive to opt out has been eliminated by the pre-notice partial summary judgment.

But even if that were so, any incentive to stay in the class that might result from the trial court's order would affect only the size of the class, not its fundamental nature. And in *De Los Santos* we said that simply enlarging the class's membership is not enough. 933 S.W.2d at 495. Importantly, *De Los Santos* was not about strategic opting in, which is what Bally complains of here. It was about forcing plaintiffs who had already opted out into a mandatory settlement class. The law does not permit plaintiffs in a mandatory class to opt out, even if they have every incentive to do so. Thus, the plaintiffs lost their ability to opt out and were forced into a class and a settlement against their will.

By contrast, the Jackson class members face no legal bar to opting out as a result of the pre-notice partial summary judgment. Nor are they forced into a class against their will. And unlike the *De Los Santos* class members, the class members here have not been forced into a conflict with class counsel. The trial court's orders do not change the nature of the class, nor do they affect class members' relationships with each other or with class counsel. We conclude that *De Los Santos* cannot be extended to the present case, which does not implicate any of *De Los Santos'* concerns.

The dissent states emphatically that a class can never be certified or maintained after any merits decision favoring a plaintiff because of the resulting potential for one-way intervention. Yet it fails to explain how the trial court's orders here alter the class's fundamental nature as required by *De Los Santos*. That the order might be wrong (which we do not decide) does not make it appealable, else all alleged irregularities in a class-action suit would be immediately subject to review. Under the dissent's analysis, any order denying a motion for reconsideration of a class certification alleging that the class did not meet the requirements of Rule 42 would be subject to interlocutory review. Whether or not orders that might create the potential for one-way intervention are prohibited, as Bally claims, the question presented is whether any such prohibition may be remedied by interlocutory appeal under our statute's limited jurisdictional grant. And whether or not the trial court's order here impermissibly created an incentive for potential class members to opt in, which is far from clear, it changed nothing about the class itself.

Moreover, we question the dissent's sweeping assertion that any pre-notice merits determination favoring the plaintiff requires decertification. None of the cases the dissent relies upon establishes such a *per se* rule. To the contrary, those cases reveal that the federal courts have declined to proclaim a bright-line rule outside the context of the case's background

or procedural posture.[3] *See* NEWBERG ON CLASS ACTIONS § 7.15 at 7–54 (3d ed.) ("Whether summary dispositions on the merits, before a class ruling, may be proper in a Rule 23(b)(3) class action is unsettled."). These decisions are consistent with the broad discretion afforded district courts in certifying and managing class actions. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1096 (5th Cir.1977).

In *Schwarzschild v. Tse*, for example, the Ninth Circuit rejected the defendant's request to order notice sent to class members almost six months after the defendant's summary judgment motion was granted. 69 F.3d 293, 297 (9th Cir.1995). The court specifically left open the question whether certification and notice may proceed in cases in which the plaintiffs have prevailed on summary judgment. *Id.* at n. 4. In reserving that question, the court referred to *Postow v. OBA Federal Savings & Loan Ass'n*, 627 F.2d 1370, 1383 (D.C.Cir.1980). There, the court observed: "[T]he present state of the law *does not necessarily preclude class certification after a judgment on the merits* ... there may be equitable reasons for allowing post-judgment certification in some cases." *Id.* (emphasis added). The *Postow* court concluded that the trial court did not abuse its discretion in refusing to decertify a class after rendering summary judgment in the plaintiffs' favor, taking into account the complicated procedural history of the case. *Id.* at 1383–84. The court cited the following "equitable reasons" for allowing post-judgment certification in that case:

> The class was originally certified before summary judgment was granted to the Postows on Count II (though the members of the class were not correctly identified and notified until after then); Oriental moved for summary judgment after the Postows had agreed to stay discovery on the identity of the potential

---

**3.** In *Smith v. Shawnee Library System*, the Seventh Circuit considered whether class members who had not yet received class notice were bound by a summary judgment favoring the defendant. 60 F.3d 317 (7th Cir. 1995). The court held that they were not. *Id.* at 322. Although the court stated that "the class action status of the litigation is void," that statement supported the court's conclusion that the class members were not bound. The court cited *Gert v. Elgin National Industries*, 773 F.2d 154 (7th Cir.1985), another case the dissent relies upon. But the *Gert* court did not hold that the class certification was void; rather, it set aside the district court's order granting summary judgment insofar as it purported to rule against the class members who had not received notice of the class action. *Id.* at 160.

Neither does *Peritz v. Liberty Loan Corp.* establish the bright-line rule the dissent advocates. 523 F.2d 349 (7th Cir.1975). There, the court expressly declined to decide "whether in all cases Rule 23(c) would bar certification subsequent to a decision on the merits." 523 F.2d at 354 n. 4. Instead, the court set aside the class certification because

the plaintiffs had obtained a favorable jury finding on the central liability issue before even seeking certification. *Id.* at 354–55. In contrast, the plaintiffs in the present case sought class certification and notice relatively early in the litigation, although discovery disputes and interlocutory appeals delayed class notice. In *Philip Morris, Inc. v. National Asbestos Workers Medical Fund*, the Second Circuit expressly noted that it did not "foreclose the possibility of a post-trial class certification." 214 F.3d 132, 135 (2d Cir.2000). And in *Premier Electrical Construction Co. v. National Electrical Contractors Ass'n*, the issue was not the class's validity, but whether a class member that had opted out of one class action in which a plaintiff class prevailed could rely on collateral estoppel in another lawsuit. 814 F.2d 358, 367 (7th Cir.1987). Finally, in *Katz v. Carte Blanche Corp.*, the Third Circuit commented that "the judicial system may, *by postponing class action treatment until a violation has been proved,* avoid whatever time and expense it ... might have incurred in the preparation of [class] notice." 496 F.2d 747, 760 (3d Cir.1974) (emphasis added).

class members only until a decision on Oriental's motion to dismiss; and the notice to potential class members did not inform them as to the existence of any judgment in their favor, thus reducing substantially the "one way street" danger of post-judgment certifications. *Postow*, 627 F.2d at 1383.

The procedural background in this case is remarkably similar. The class here was originally certified, and that certification was appealed and upheld, before partial summary judgment was granted to the plaintiffs. Moreover, the notice approved by the trial court does not inform potential class members of any judgment in their favor, thus reducing any potential danger from one-way intervention. In addition, Bally had earlier moved for summary judgment seeking dismissal of the class's claims. Finally, the record suggests that Bally at least contributed to the delay in class notification, as plaintiffs claim; for example, on October 2, 1998, Bally was ordered to produce data about potential class members in electronically readable form, and more than seven months later had not yet complied. If we were deciding the merits of this appeal, we would take all of these considerations into account, as the *Postow* court did, in deciding whether the trial court's orders were erroneous. But to review those orders on an interlocutory basis we must have jurisdiction, which simply does not exist under our limited legislative grant.

The dissent also states that the trial court's refusal to decertify is the functional equivalent of a decision granting certification. But the Legislature has shown elsewhere in section 51.014 that it knew how to encompass such orders. Section 51.014(a)(4) allows an appeal from an order that "grants or refuses a temporary injunction or *grants or overrules a motion to dissolve a temporary injunction* as provid-

ed by Chapter 65." (emphasis added). The Legislature could have added similar language to Section 51.014(a)(3) and permitted appeals from orders refusing to decertify a class, but did not. Rather, the Legislature specified that an appeal lies only from an order that "certifies or refuses to certify a class." TEX. CIV. PRAC. & REM.CODE § 51.014(a)(3). Moreover, though one court of appeals has allowed an interlocutory appeal of an order decertifying a class, *see Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366, 368–69 (Tex. App.—Houston [14th Dist.] 1987, no writ), there is a logical distinction between an order that grants a motion to decertify and an order that denies such a motion. While an order that grants a motion to decertify actually alters the original certification decision, an order refusing to decertify does not change the status quo. *Cf. Gary v. Sheahan*, 188 F.3d 891, 893 (7th Cir.1999) (holding that an order denying a motion to decertify a class is not subject to interlocutory appeal as an order refusing to certify a class under the federal rules). Allowing interlocutory appeals whenever a trial court refuses to change its mind and decertify a class would invite successive appeals and undermine the statute's purpose of promoting judicial economy. *See Walker v. Packer*, 827 S.W.2d 833, 842 (Tex.1992) (noting the disruptive nature of mandamus review and stating that "the system cannot afford immediate review of every discovery order"); *cf. Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir.2000) (noting in the context of appeals from class certification orders that "interlocutory appeals are disruptive, time-consuming, and expensive"). Thus, the trial court's orders overruling Bally's motions to decertify do not fit within the *De Los Santos* test for interlocutory-appeal jurisdiction.

## III

Because Bally may still appeal after final judgment, its constitutional arguments concerning one-way intervention are premature. The only issue before us today is the court of appeals' jurisdiction over this interlocutory appeal. The Legislature has carefully articulated which interlocutory orders may be appealed. We are bound by that policy choice. Accordingly, we affirm the court of appeals' dismissal for want of jurisdiction.

Dissenting opinion by Justice OWEN, joined by Justice HECHT and Justice ABBOTT.

Justice JEFFERSON did not participate in the decision.

Justice OWEN, joined by Justice HECHT and Justice ABBOTT, dissenting.

After the class in this case had been certified, but before notice was given to class members, the trial court granted partial summary judgment for the plaintiffs on the liability issues. The trial court thus converted the class from one that did not permit so-called "one-way interventions" into a class that did. This altered the fundamental nature of the class because under our class action rule, when liability is resolved before notice is given to class members, the class certification can no longer be sustained, and the class must be decertified. An interlocutory appeal from a denial of a motion to decertify can be taken under these circumstances. Accordingly, I dissent.

Bally says, and I agree, that there is no principled basis for drawing a distinction between the facts of this case and the facts in *De Los Santos v. Occidental Chemical Corp.,* 933 S.W.2d 493 (Tex.1996). In *De Los Santos,* the trial court modified the class to change it from an opt-out class to a mandatory class. We held that this fun-

damentally altered the nature of the class. "Changing a class from opt-out to mandatory does not simply enlarge its membership; it alters the fundamental nature of the class." *De Los Santos,* 933 S.W.2d at 495. We accordingly held that the court of appeals had jurisdiction over an interlocutory appeal from the trial court's modification of the class even though a modification of a class is not, strictly speaking, "an interlocutory order ... that ... certifies or refuses to certify a class" within the meaning of section 51.014(a)(3). TEX. CIV. PRAC. & REM.CODE § 51.014(a)(3). In this case, the fundamental nature of the class was altered when the trial court issued a decision on liability before notice to class members had been given. After that ruling, a class could no longer be certified. Decertification was required.

The law is clear in this regard. That is because our class action rule, like the federal rule, was designed to put an end to so-called "one-way intervention" when an opt-out class is certified. *See* TEX.R. CIV. P. 42(c)(2); FED.R.CIV.P. 23(c)(2). As the United States Supreme Court has explained, until 1966, the federal class action rule allowed members of a class to wait and see the outcome before deciding whether to join:

> "[W]hen a suit was brought by or against such a class, it was merely an invitation to joinder—an invitation to become a fellow traveler in the litigation, which might or might not be accepted." A recurrent source of abuse under the former Rule lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests.

*American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 546–47, 94 S.Ct. 756, 38 L.Ed.2d

713 (1974) (citations omitted). This potential for "one-way intervention" was ended by the current federal class action rule:

This situation—the potential for so-called "one-way intervention"—aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one. The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.

*Id.* at 547, 94 S.Ct. 756 (footnotes omitted).

Now, certification and notice must occur before any decision on the merits is reached so that all class members will be bound, whether the judgment is *favorable* or unfavorable:

Once it is determined that the action may be maintained as a class action under subdivision (b)(3), the court is mandated to direct to members of the class "the best notice practicable under the circumstances" advising them that they may be excluded from the class if they so request, that they will be bound by the judgment, whether favorable or not if they do not request exclusion, and that a member who does not request exclusion may enter an appearance in the case.

*Id.* at 547–48, 94 S.Ct. 756 (footnotes omitted).

The federal courts have adhered to the requirement that a decision on the merits must occur after notice to the class or else a class cannot be certified or maintained. "The purpose of Rule 23(c)(2) is to ensure that the plaintiff class receives notice of the action well *before* the merits of the case are adjudicated." *Schwarzschild v.*

*Tse,* 69 F.3d 293, 295 (9th Cir.1995) (emphasis in original). This is true even if a determination of the merits is interlocutory and is favorable to the plaintiff rather than the defendant, as is the case here. When the plaintiff has received summary judgment in its favor, class certification or notice to the class after a merits determination is prohibited. The Seventh Circuit has so held in an interlocutory appeal. *Peritz v. Liberty Loan Corp.,* 523 F.2d 349 (7th Cir.1975). It recognized that "[t]he obvious import ... is that the amended Rule 23 requires class certification prior to a determination on the merits." *Id.* at 353. That court reiterated what the Supreme Court had said in *American Pipe:*

Section 23(c)(1) makes it plain in the second sentence thereof that the order determining class status is to be made and finalized "before the decision on the merits." Section 23(c)(2) similarly indicates that the class members in a 23(b)(3) class action are to be notified early enough to allow voluntary exclusion prior to "judgment" and also early enough to allow for effective appearance by counsel. Section 23(c)(3), by providing that the judgment shall bind all class members, was specifically intended to confront the one-way intervention problem, as the Advisory Committee Notes point out.

*Peritz,* 523 F.2d at 354. Decertification was required:

Inasmuch as the plaintiffs here did not seek certification, and in fact affirmatively sought resolution on the merits prior to certification in the face of objections by the defendants, they have themselves effectively precluded any class certification in this case. Accordingly, this cause is remanded with instruction to vacate the order of certification of the

class and to proceed with the individual claims of the named plaintiffs.

*Id.*

*Peritz* is indistinguishable from this case. In *Peritz*, the trial court convened a jury for a special verdict on the sole issue of whether a loan form used by the defendant clearly and conspicuously made certain disclosures. *Id.* at 351. After the jury found against the defendant, the trial court certified a class and ordered the defendant to pay the costs of notice. The defendant then filed an interlocutory appeal. The Seventh Circuit held that assessing costs of notice against the defendant was a final order within the meaning of 28 U.S.C. § 1291, and that the trial court's decision on the merits before class certification and notice was an order "[u]nderlying and basic to" the assessment of costs. The Seventh Circuit then squarely and extensively addressed why the trial court had erred in ruling on the merits of the liability issue common to all potential plaintiffs before certifying the class and sending notice. The circuit court held that decertification was required under those circumstances. *Id.* at 354–55. The Court argues that *Peritz* "expressly declined to decide 'whether in all cases Rule 23(c) would bar certification subsequent to a decision on the merits.'" 53 S.W.3d at 357 n. 3. But the examples *Peritz* cites as situations in which certification may occur after an adjudication of the merits are cases in which a defendant has waived one-way intervention protection. *Peritz*, 523 F.2d at 354 n. 4.

*Peritz* is not an anomaly. It is in line with what virtually every court that has considered the issue has said. *See, e.g., Smith v. Shawnee Library Sys.*, 60 F.3d 317, 322 (7th Cir.1995) (holding that "class certification was void because no notice was ever given" before adjudication of the merits); *see also Gert v. Elgin Nat'l In-*dus., Inc., 773 F.2d 154, 159–60 (7th Cir. 1985); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 762 (3d Cir.1974) (noting that the federal class action rule provides protection against one-way intervention after an interlocutory merits determination). In *Philip Morris Inc. v. National Asbestos Workers Medical Fund*, 214 F.3d 132, 135 (2d Cir.2000), which was a mandamus proceeding, the Second Circuit held that a trial court was required to decide whether to certify a class before it proceeded to try the case on the merits. This was necessary, the Second Circuit explained, to forestall the "specter of a risk-free intervention decision by thousands of putative plaintiffs." *Id.* Although the Second Circuit stated that "[w]hile [it did] not foreclose the possibility of a post-trial class certification in another case," it emphasized that such a situation would be rare, stating that "it is 'difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits.'" *Id.* (quoting *Bieneman v. Chicago*, 838 F.2d 962, 964 (7th Cir.1988)).

In this case, the plaintiffs will know the outcome before deciding whether to opt out, which the federal class action rule, like our rule, prohibits:

> The prompt decision on certification would both fix the identities of the parties to the suit and prevent the absent class members from waiting to see how things turned out before deciding what to do. . . . So a person's decision whether to be bound by the judgment—like the court's decision whether to certify the class—would come well in advance of the decision on the merits. Under the scheme of the revised Rule 23, a member of the class must cast his lot at the beginning of the suit and all parties are bound, for good or ill, by the results.

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n,* 814 F.2d 358, 362 (7th Cir.1987).

The Court refuses to rule on the substantive requirements of our class action rule in this regard, which is taken from the federal rule. *Compare* TEX.R. CIV. P. 42(c) *with* FED.R.CIV.P. 23(c). The Court will not say whether a decision on the merits before notice to the class destroys the ability of a trial court to maintain a class and thus fundamentally alters the nature of the class. Instead, the Court asks and answers irrelevant questions, such as whether the trial court's ruling on the merits creates incentives for class members to opt out or will increase the size of the class. 53 S.W.3d at 355.

The overarching question is *whether there can be a class at all* after the trial court's ruling on the merits. If there can no longer be a class, the fundamental nature of the class has unquestionably been changed. If the trial court's ruling on the merits destroyed its ability to maintain a class, then surely, that ruling affected "class members' relationships with each other or with class counsel," which the Court says were the concerns that permitted an interlocutory appeal in *De Los Santos. Id.*

The Court attempts to distinguish the federal decisions that have declared that the current class action rule was intended to end and has ended one-way intervention. The Court says that it is an open question whether "certification and notice may proceed in cases in which the plaintiffs have prevailed on summary judgment." *Id.* at 357. The Court's discussion of the federal authorities is misleading.

First, the Court cites a footnote in *Schwarzschild v. Tse* that in turn cites *Postow v. OBA Federal Savings and Loan Ass'n,* 627 F.2d 1370, 1383 (D.C.Cir.1980).

These decisions stand only for the proposition that a defendant can waive the protection against one-way interventions that the class action rule affords. The body of the opinion in *Schwarzschild* notes that "several circuits have concluded that a defendant waives his right to have notice sent to the class under Rule 23(c)(2) whenever he moves for summary judgment *before* the class has been properly certified and notified." 69 F.3d at 297 (emphasis in original). And that is precisely what happened in *Postow.* The decision in *Postow* expressly recognizes that the class action rule affords protection from having a determination of the merits before certification and notice but that this protection can be waived: "[A] defendant may waive the protections Rule 23(c) offers and elect to have the merits decided ... before notice is sent to the class when, as here, the defendant moves for summary judgment before resolution of the certification issue." 627 F.2d at 1382. The *Postow* decision explained that one reason for requiring certification before a ruling on the merits is to protect a defendant from future suits by potential members of the class, but that this reason is no longer viable when the defendant insists on a determination of the merits before certification or notice:

Other courts have expressly held that a defendant may waive the protections Rule 23(c) offers and elect to have the merits decided before the class certification question and before notice is sent to the class when, as here, the defendant moves for summary judgment before resolution of the certification issue. *E.g., Katz v. Carte Blanche Corp.,* 496 F.2d 747, 757–62 (3d Cir.1974) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Torosian v. National Capital Bank of Washington,* 411 F.Supp. 167, 169–71 (D.D.C.1976); *Haas v. Pittsburgh Nat'l Bank,* 381 F.Supp.

801 (W.D.Pa.1974), *rev'd on other grounds*, 526 F.2d 1083 (3d Cir.1975).

We find the reasoning of those opinions instructive. The *Haas* court noted, for example, that the strongest argument for construing *Eisen* to preclude post-judgment class certification is that pre-judgment certification and notice to the class are necessary to protect the defendant from future suits by potential members of the class. But that rationale disappears when the defendant himself moves for summary judgment before a decision on class certification. In such a situation, "the defendants ... assume the risk that a judgment in their favor will not protect them from subsequent suits by other potential class members, for only the slender reed of stare decisis stands between them and the prospective onrush of litigants." *Haas*, supra, 381 F.Supp. at 805.

*Postow*, 627 F.2d at 1382 (footnote omitted).

This unremarkable holding is consistent with *Peritz* and *Katz. See Peritz*, 523 F.2d at 354 n. 4; *Katz*, 496 F.2d at 762. Bally has not waived its rights in this case. The Court mischaracterizes the record when it says that "Bally had earlier moved for summary judgment seeking dismissal of the class's claims." 53 S.W.3d at 358. Bally did not move for summary judgment on the merits of the class's claims. Bally requested summary judgment on Jackson's individual claims based on the affirmative defense of one-satisfaction, arguing that in a prior suit against Bally, Jackson had already received full satisfaction of all amounts he sought to recover in this suit. Because of this affirmative defense peculiar to Jackson and because Jackson was the only name-plaintiff at the time of Bally's motion, Bally also argued that the suit could not be maintained as a class action. But unlike the defendant in *Postow*, Bally did not request summary judgment on the merits of the class's underlying claims.

Next, the Court quotes *Katz* entirely out of context, suggesting that it stands for the proposition that postponing certification until after a determination of the merits would be efficient and acceptable. *Id.* at 357 n. 3. In *Katz*, the *defendant, not the plaintiff who was seeking certification,* asked the trial court to rule on the merits before certification. The defendant hoped to prevail on the merits and thus avoid having a class consisting of its customers certified and notified. The *Katz* court was careful to point out that the defendant would otherwise have had the right to insist on notice to the class before liability was determined:

Finally, turning to the defendant's interest, it must be understood that we are dealing only with the defendant who declines the protection against one-way intervention after a violation has been proved which rule 23(b)(3) was designed to afford. If a class action defendant insists upon early class determination and notice, he is, under the rule, entitled to it. But where he makes a nonfrivolous claim that his business will be harmed or disrupted by the notice, and is willing to run the risk that the determination of liability, if he loses, will be given effect in favor of the class, with notice in the event of such determination, the district court must seriously consider that alternative.

496 F.2d at 762.

The Court's implication that *Katz* would permit a trial court to establish a defendant's liability at the request of a plaintiff seeking certification and then decide whether to certify a class is directly contrary to the United States Supreme Court's holding in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40

L.Ed.2d 732 (1974). The Supreme Court admonished that a trial court is prohibited from conducting any inquiry into the merits in deciding whether to certify a class:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such "as soon as practicable after the commencement of [the] action...."

*Eisen,* 417 U.S. at 178–79, 94 S.Ct. 2140.

This Court has expressly followed *Eisen,* determining that evaluation of the merits prior to certification is inappropriate:

> Deciding the merits of the suit in order to determine the scope of the class or its maintainability as a class action is not appropriate. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 572 (2d Cir.1982); *Irving Trust Co. v. Nationwide Leisure Corp.,* 95 F.R.D. 51, 62 (S.D.N.Y.1982). By evaluating the merits at the certification stage, the trial court would allow a representative plaintiff to secure the benefits of proceeding with a class-action suit without first satisfying the requirements for maintaining

one. *See Eisen,* 417 U.S. at 177, 94 S.Ct. 2140.

*Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 404 (Tex.2000).

The Court attempts to refute the rule that a merits determination should not occur before class certification and notice by noting that in some of the cases cited above, the trial court proceeded with certification and notification after the *defendant* had been granted summary judgment. The Court argues, therefore, that those cases are inapposite in deciding whether certification can proceed after a trial court grants summary judgment in favor of the *plaintiff.* I agree that cases in which a defendant is granted summary judgment before certification present different concerns than when a plaintiff has been granted summary judgment. For example, a trial court must consider the due process rights of potential class members in deciding whether to proceed with class certification and notification after a defendant receives a favorable summary judgment ruling. *Gert,* 773 F.2d at 159–60. But these different concerns do not detract from these courts' clear recognition that, absent waiver by the defendant, a trial court is prohibited from adjudicating the merits at the plaintiff's request until after certification and notification.

The federal class action rule, which the Texas rule follows in the aspects material here, has been authoritatively construed to mean that a class cannot be maintained if a trial court rules on the merits before giving notice to the class. This Court may not agree with what the federal courts have said, but it cannot plausibly deny that they have said it.

The Court's remarks about federal precedent concerning interlocutory appeals reveal that it continues to insist on asking the wrong questions. The case before us does not turn on whether the federal rules

or statutes would permit an interlocutory appeal. The question is whether Texas law permits an interlocutory appeal. That in turn depends on whether the trial court's ruling fundamentally changed the nature of the class. The trial court in this case changed the nature of the class when its ruling on the merits ended the viability of the class. The purpose of section 51.014(a)(3) of the Texas Civil Practice and Remedies Code, which allows interlocutory appeals of certain class-certification rulings, is to ensure that the costly process of a class action, with its attendant potential for irremediable harm to a defendant, does not proceed when there is no basis for certifying a class. Section 51.014(a)(3) provides that "[a] person may appeal from an interlocutory order ... that: ... certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM.CODE § 51.014(a)(3). The Legislature has directed that in construing this provision, we may consider the object it sought to attain and the consequences of a particular construction. TEX. GOV'T CODE § 311.023; *see also Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 350 (Tex.2000). The Court has refused to acknowledge and give effect to the object that the Legislature sought to attain, which is to allow interlocutory appeals of rulings on whether a class is certified. In this case, the trial court's refusal to decertify after the certification could no longer be sustained is the functional equivalent of and indistinguishable from a decision granting certification.

In closing, it should be noted that the Court says Bally is appealing the order that granted partial summary judgment. 53 S.W.3d at 359. That is not the case. Bally is appealing only the trial court's refusal to decertify the class after it had ruled on the merits. Bally's briefing and request for relief are unmistakable in this regard.

Because the Court refuses to give effect to legislative intent and to adhere to our own precedent, I dissent.