NUMBER 13-02-330-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS            

 

                                CORPUS CHRISTI

 



 

CITGO
REFINING AND MARKETING, INC.

AND CITGO PETROLEUM CORPORATION,                             Appellants,

 

                                                   v.

 

AMELIA
GARZA, ET AL.,                                                       Appellees.



 

 

                         On appeal from the 28th District Court

                                  of Nueces County, Texas.

 



 

                                   O P I N I O N

 

                   Before Justices Hinojosa, Castillo, and
Chavez[1]

                                  Opinion by Justice Castillo

 








This is an attempted
appeal from an interlocutory order of the trial court following a non-jury
trial on the merits in a class action. 
The challenged order approved notice to two previously certified
subclasses of a damages award in the plaintiffs= favor, of class counsel=s request for expenses
and attorneys= fees, and of a
proposed distribution of the anticipated judgment.  Appellants, Citgo Refining and Marketing,
Inc. and Citgo Petroleum Corporation (jointly, ACitgo@), contend in two
issues that:  (1) the order either
certified a new class or fundamentally altered the nature of the class, making
it subject to interlocutory appeal and conferring jurisdiction on this Court;
and (2) the trial court abused its discretion in certifying or fundamentally
altering the nature of the class.  We
dismiss for want of jurisdiction.  

                                        PROCEDURAL
BACKGROUND

Although this lawsuit
has been through complicated consolidations, settlements, and severances, for
purposes of this attempted appeal it is procedurally fairly simple.  Litigation began in 1993 with the filing of
claims by commercial and residential property owners for property damage from
alleged long-term emissions of contaminants by several chemical manufacturers
and owners of commercial facilities in Corpus Christi=s Arefinery row@ area.  Other suits ensued, which ultimately were
consolidated into one proceeding.  The
following is a simplified chronology, in the most general terms, of events
relevant to an understanding of this appeal. 














On November 14,
1995, the trial court certified the case as a class action.[2]  Broadly speaking, the certification order
divided the class into subclasses that included, among other subclasses, three
residential areas:  (1) the AOak Park Triangle@; (2) the AI-37 South@ properties; and (3)
the AI‑37 North@ properties.  On September 28, 1997, the class entered into
a settlement agreement with Citgo, which was filed with the trial court.  The Citgo settlement agreement provided, among
other terms, for Citgo to buy out homeowners in the Oak Park Triangle and pay
$1,450,000 to the I-37 South subclass and $3,550,000 to the I-37 North
subclass.  In mid-January of 1998, the
trial court appointed a guardian ad litem in response to class concerns about
several proposed settlements.  Following
extended discussions between the settling parties and the court, Citgo began to
buy out the Oak Park Triangle subclass, although under terms different from
those recited in the Citgo settlement agreement.  On November 22, 1999, Citgo filed a
motion for decertification, which was denied by the trial court on November 24,
1999.  On January 12-14, 2000, the trial
court heard plaintiffs= motion for
preliminary approval of proposed settlements with several of the defendants,
including the settlement with Citgo. 
Citgo opposed approval of the settlement agreement, objecting that it
was no longer enforceable.  On
January 23, 2000, the trial court severed the plaintiffs= claims against three
groups of defendants and granted preliminary approval of those
settlements.  On January 25, 2000, over
Citgo=s objections, the
trial court granted preliminary approval of the Citgo settlement.  By separate order that same date, the trial
court severed Aall claims and causes
of action brought by the plaintiffs against@ Citgo from the class claims against the only
other remaining defendant, Coastal Corporation, and the class proceeded to
trial on the claims against Coastal.

Meanwhile, Citgo
completed its buy-out of the Oak Park Triangle subclass, obtaining releases
from each of the homeowners.  Still
asserting a number of defenses to enforceability of the settlement agreement,
Citgo did not fund the $5,000,000 that the settlement agreement obligated it to
pay to the I-37 South and I-37 North subclasses.  On March 29, 2000, plaintiffs filed an
amended class-action petition containing an Aalternative claim against Citgo for breach of
contract@ for its alleged
breach of the settlement agreement, which they amended again on June 27,
2001.  On July 6, 2001, Citgo filed a
supplemental motion to decertify the class action and vacate the November 14,
1995 certification order.  Both sides
filed motions for summary judgment on the plaintiffs= breach-of-contract
claim against Citgo.  The parties agreed
to submit the merits of the breach-of-contract claim and defenses to the trial
court instead of pursuing the cross motions for summary judgment.  They waived a jury trial, and on August 13
and 14, 2001, the trial court conducted a bench trial on the
breach-of-contract claim.  Plaintiffs did
not adjudicate their class tort claims against Citgo.  








By written order
signed on October 17, 2001, the trial court found in relevant part that:  (1) Citgo entered into a valid and
enforceable settlement with the plaintiff class that remained valid and
enforceable at all times prior to Citgo=s breach; (2) Citgo
breached its settlement agreement with the plaintiff class; and (3) the
plaintiff class was damaged in the amount of $5 million by Citgo=s breach.  The order set an evidentiary hearing on the
issue of attorneys= fees, which the trial court conducted on
February 22, 2002.  On March 15, 2002,
the trial court awarded the class $700,000 in attorneys= fees on the
breach-of-contract claim.  

With resolution by
trial, settlement, or dismissal of all class claims against Citgo=s co-defendants and on
finalization of Citgo=s buy-out of the Oak
Park Triangle subclass, only the I-37 South and I-37 North subclasses were
still in active litigation in the severed claims against Citgo at the time of
trial on the breach-of-contract claim. 
On April 30, 2002, class counsel submitted for approval a proposed
notice to the remaining class (expressly excluding members of the Oak Park
Triangle subclass who had participated in the buy-out of their properties by
Citgo) of an anticipated judgment on the breach-of-contract claim.  The proposed notice also informed the class
of each member=s right to opt out of
the class and notified the class of class counsel=s request for reimbursement of expenses and, in
addition to the $700,000 awarded on the breach-of-contract claim, for $1.5
million in attorneys= fees under a common
fund theory for counsel=s work with regard to
the class tort claims.  








On May 14, 2002, the
trial court conducted a hearing on the motion to approve the notice.  Citgo objected to the notice, claiming that
it effectively certified a new class because it excluded the Oak Park Triangle
subclass and because the breach-of-contract cause of action had not existed at
the time the class was originally certified in 1995.  Citgo also argued that the notice certified
an impermissible one-way intervention or Afail safe@ class because
recovery was assured under the anticipated judgment on the breach-of-contract
claim.  Objecting that class counsel was
not entitled to attorneys= fees both for
prosecuting the underlying tort claim and as awarded in the breach-of-contract
claim, Citgo contended that counsel=s fee request created
a conflict of interest between counsel and the class.  Also, Citgo asserted that omission of the Oak
Park Triangle subclass and the proposed distribution of the $5 million
only to the I-37 South and I‑37 North subclasses created a conflict of
interest between the three subclasses.  








On May 16, 2002, the
trial court signed an order approving the proposed notice, a copy of which was
attached to the order (the AMay 2002 Order@).  It is from the May 2002 Order that Citgo
seeks an interlocutory appeal.  Appellees
moved for dismissal of the appeal, arguing that we have no jurisdiction to
consider Citgo=s challenges to the
May 2002 Order.  After Citgo filed its
notice of appeal, the trial court signed an amended order approving notice to
the class that set a fairness hearing on September 20, 2002 Ato address any issues
raised by class members in relation to the judgment on the settlement.@  In response, Citgo moved for emergency relief
in this Court and asked that we stay entry of any final judgment by the trial
court pending the outcome of this interlocutory appeal.  By per curiam order dated September 10, 2002,
we denied Citgo=s request.  Class counsel filed a proposed allocation of
the anticipated judgment on September 17, 2002, and the trial court conducted
the fairness hearing on September 20, 2002. 


                            INTERLOCUTORY
APPELLATE JURISDICTION

The Texas Supreme
Court has adhered steadfastly through the years to the rule that an appeal may
be prosecuted only from a final judgment and that to be final a judgment must
dispose of all issues and parties in a case. 
N. E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex. 1966).  Accordingly, except as expressly authorized
by statute, no appeal lies from an interlocutory order.  Cherokee Water Co. v. Ross, 698 S.W.2d
363, 365 (Tex. 1985) (orig. proceeding) (per curiam); Aldridge, 400
S.W.2d at 895.

Section 51.014 of the
Texas Civil Practice and Remedies Code allows appeal from certain interlocutory
orders, including one that Acertifies or refuses
to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil
Procedure.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(3) (Vernon Supp. 2003). 
Section 51.014 is strictly construed as a Anarrow exception@ to the general rule that only final judgments
and orders are appealable.  Bally Total Fitness Corp. v. Jackson, 53 S.W.3d 352, 355
(Tex. 2001).  








Texas Rule of Civil
Procedure 42 governs class actions.  Tex. R. Civ. P. 42.  Rule 42(c)(1) provides that A[a]s soon as
practicable after the commencement of an action brought as a class action, the
court shall, after hearing, determine by order whether it is to be so
maintained.  This determination may be
altered, amended or withdrawn at any time before final judgment.@  Tex.
R. Civ. P. 42(c)(1); Morgan v. Deere Credit,
Inc., 889 S.W.2d 360, 365 (Tex. App.BHouston [14th Dist.]
1994, no writ); Salvaggio v. Houston Indep. Sch. Dist., 709 S.W.2d 306,
309‑10 (Tex. App.BHouston [14th Dist.] 1986, writ dism'd).  

Simply stated, the
jurisdictional problem in the present case is whether the trial court=s May 2002 Order
approving notice to the class amounts to an order that Acertifies or refuses
to certify a class.@  The May 2002 Order does not
expressly certify or refuse to certify a class.   Citgo concedes that no Texas court has held
that an order approving the form of notice to a class is subject to
interlocutory appeal.  Citgo argues that:
(1) the effect of the order approving the notice is to certify a new class,
subjecting the order to interlocutory appeal under an express exception to the
finality rule contained in section 51.014(a)(3); and (2) interlocutory appeal
lies from any order that alters the fundamental nature of a class.  Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(3) (Vernon Supp. 2003); see De Los Santos v. Occidental
Chem. Corp., 933 S.W.2d 493, 495 (Tex. 1996) (per curiam) (permitting
interlocutory appeal of an order changing the class from opt-out to
mandatory).  Appellees contend that the
class action has remained as originally certified throughout the case, indeed
since 1995, that the May 2002 Order is clearly denominated as an order
approving the form of notice to the class of the anticipated judgment, and that
the order does not certify any class, refuse to certify any class, or alter the
existing class in any way.  








Citgo counters that
the particular wording of the trial court=s order is irrelevant
to the nature of the order and its appealability.  We note that substance controls in
determining the finality of a judgment, not the judgment=s label or form.  Mathes v. Kelton, 569 S.W.2d 876, 878
(Tex. 1978); Int=l Sec. Life Ins. Co.
v. Spray,
468 S.W.2d 347, 350 (Tex. 1971); Ferguson v. Naylor, 860 S.W.2d 123, 129
(Tex. App.BAmarillo 1993, writ
denied) (op. on reh=g).  Accordingly, the Texas Supreme Court has
rejected matters of form as controlling the nature of an order or judgment in
favor of an examination of the character and function of the order in
determining its classification.  See
Del Valle Indep. Sch. Dist. v. Lopez, 845 S.W.2d 808, 809 (Tex. 1992)
(analyzing whether an order granted injunctive relief and therefore was
appealable).  Even express language
asserting that an order is temporary is not controlling if the effect of the
order establishes finality.  Brines v.
McIlhaney, 596 S.W.2d 519, 524 (Tex. 1980) (orig. proceeding) (finding that
when the substance of a decree amounts to a final judgment, incidental language
labeling portions of the decree as temporary is not controlling).  Thus, it is the substance and practical
effect of the May 2002 Order that determines whether it is immediately
appealable.  








At the appealability
end of the spectrum of interlocutory orders, in addition to the two statutorily
recognized class-action orders (orders granting and orders denying class
certification), only two other types of orders in class actions have been held
to have the effect of certifying or refusing to certify a class and thus are
subject to interlocutory appeal in Texas. 
The first application of section 51.014(a)(3) to an order that did
not expressly certify or refuse to certify a class recognized that a withdrawal
of certification has the same practical effect as a refusal to certify and,
thus, is an appealable interlocutory order. 
Grant v. Austin Bridge Constr. Co., 725 S.W.2d 366, 368 (Tex. App.BHouston [14th Dist.]
1987, no writ); see also Wood v. Victoria Bank & Trust Co., 69
S.W.3d 235, 238 (Tex. App.BCorpus Christi 2001,
no pet.) (interpreting De Los Santos in holding that an order that
decertifies a class is an order that certifies or refuses to certify a class
for purposes of section 51.014(a)(3) since it alters the fundamental nature of
the class and changes the status quo ante).  Grant acknowledged the appealability
of a decertification order, in part, because a more narrow interpretation of
section 51.014(a)(3) would give trial courts the power to circumvent appellate
review by first granting, then withdrawing, class certification.  Grant, 725 S.W.2d at
368‑69.  The only other
application of section 51.014(a)(3) to an order that did not expressly
certify or refuse to certify a class came in the supreme court=s recognition in De
Los Santos that an order changing the characterization of a class from
opt-out to mandatory fundamentally alters the nature of the class and  therefore is immediately appealable.  De Los Santos, 933
S.W.2d at 495. 








On the opposite end of
the appealability spectrum, rule 42(c) grants trial courts the discretion to
alter or amend a certification decision at any time before final judgment.  Tex.
R. Civ. P. 42(c)(1).  Thus, a trial court=s exercise of its
continuing power to alter or amend the nature of an existing certified class by
an order increasing its size does not Acertify or refuse to
certify a class@ for purposes of an
interlocutory appeal.  Pierce Mortuary
Colleges, Inc. v. Bjerke, 841 S.W.2d 878, 880 (Tex. App.BDallas 1992, writ
denied).  Similarly, an order
modifying the class definition is not subject to interlocutory appeal under
section 51.014(a)(3) as an order certifying or
refusing to certify a class.  Koch
Gathering Sys., Inc. v. Harms, 946 S.W.2d 453, 456 (Tex. App.BCorpus Christi 1997,
writ denied).  In other words, an order
that merely alters attributes of a class and does not affect the underlying
certification of the action as a class action is not an order subject to
interlocutory appeal under article 51.014(a)(3).








Finally, we note that
the supreme court voiced in De Los Santos Aconcern@ about conflicts of
interest that can arise between the class and its counsel, particularly with
regard to class settlements.  Bally, 53 S.W.3d at 354-55; De Los Santos, 933 S.W.2d
at 495.  The supreme court
did observe in reviewing an order that changed a previously certified class
from opt-out to mandatory that A[t]o deny
interlocutory appeal in this situation, when class counsel agrees to a
fundamental restructuring of the class to which they were once opposed,
aggravates those concerns.@  De Los Santos, 933
S.W.2d at 495.  However, the De
Los Santos court did not hold, as Citgo suggests, that a conflict of
interest alone, even if one is created, transforms an order that is not
otherwise subject to interlocutory appeal into one that is.  We do not have jurisdiction over an
interlocutory order disposing of matters incidental to class certification
unless the order also certifies or refuses to certify the class.  See Am. Express Travel Related Servs. Co.
v. Walton, 883 S.W.2d 703, 707 (Tex. App.BDallas 1994, no writ) (holding that
section 51.014(a)(3) conferred jurisdiction over complaints about notice
and class size only because the trial court disposed of those issues in its
order certifying the class).

                              THE SUBSTANCE
AND PRACTICAL EFFECT

                                        OF THE
CHALLENGED ORDER

 








Citgo concedes that
the May 2002 Order does not fall within any of the  recognized exceptions to finality, in that
the order does not expressly grant or deny certification, decertify this class
action, or alter it from an opt-out to a mandatory class.  Citgo argues that the effect of the order
approving notice to the class of the anticipated judgment was to certify a new,
much smaller class comprised of the I‑37 South and I‑37 North
subclasses on a new cause of action, the breach-of-contract claim.  Citgo also urges that the May 2002 Order is
subject to the Afundamental alteration@ exception announced
in De Los Santos.  Specifically,
Citgo claims that: (1) exclusion of the Oak Park Triangle subclass fundamentally
altered the nature of the previously certified class by substantially reducing
its size; (2) the original class was not certified as to any breach-of-contract
cause of action, and thus the effect of the order was to fundamentally alter
the purpose for which the class was certified; (3) the notice fundamentally
altered the class by creating a new and impermissible one-way intervention or Afail safe@ class because recovery
was assured under the anticipated judgment on the breach-of-contract claim; (4)
class counsel=s request for
additional attorneys= fees for prosecuting
the underlying tort claims in addition to the attorneys= fees awarded in the
breach-of-contract claim created a conflict between class counsel and the class
and fundamentally altered the class; and (5) omission of the Oak Park Triangle
subclass and the proposed allocation of the $5 million between the I-37 South
and I‑37 North subclasses created a conflict of interest between the
three subclasses, also fundamentally altering the class and rendering the order
subject to interlocutory appeal.  We therefore
analyze the substance and practical effect of the May 2002 Order in the
context of Citgo=s objections to
determine whether the order is immediately appealable.  

                          The Exclusion of
the Oak Park Triangle Subclass








Citgo does not dispute
that the reason the Oak Park Triangle subclass is excluded from the class
notice approved by the May 2002 Order is that Citgo bought out all the members
of that class and obtained full releases from each.  The class and subclasses originally certified
in this litigation in 1995 have changed over time as a result of trial,
settlement, severance, and Citgo=s buy-out of the Oak
Park Triangle subclass.   Only the I-37
South and I‑37 North subclasses remain.  The trial court=s order approving notice to the remaining class
did not effect the change; the composition of the class evolved over time when
overtaken by intervening events. 
Further, without addressing the merits of Citgo=s threshold contention
that an order approving a notice to the class that excludes the Oak Park
Triangle subclass is the equivalent of an order changing the composition of the
class, we conclude that diminution in the size of a class as a result of
attrition by settlement and release is more akin to an order changing the size
of a class than it is to an order recharacterizing the class from opt-out to
mandatory.  See Pierce Mortuary,
841 S.W.2d at 880 (A[A]n amended order
increasing the size of an existing certified class does not certify or refuse
to certify a class pursuant to section 51.014(a)(3).@).  We hold that reduction in the composition of
a class through settlement and release after entry of the original
certification order is not a fundamental alteration in the nature of the
class.  

                             The Addition
of the Breach-of-Contract Claim

A written settlement
agreement may be enforced even if one party withdraws its consent before
judgment is rendered on the agreement.  Mantas
v. Fifth Ct. of App., 925 S.W.2d 656, 658 (Tex. 1996) (orig. proceeding)
(per curiam).  Where consent is lacking,
however, a court may not render an agreed judgment on the settlement agreement
but may enforce it only as a written contract. 
Id.  The party seeking
enforcement must pursue a separate breach‑of­-contract claim, which is
subject to the normal rules of pleading and proof.  Id. 
When the settlement dispute arises while the trial court has
jurisdiction over the underlying action, a claim to enforce the settlement
agreement should be asserted in that court under the original cause number
through an amended pleading or counterclaim. 
Id.; Padilla v. LaFrance, 907 S.W.2d
454, 462 (Tex. 1995).  The
settlement agreement alone is insufficient to provide a basis for judgment
because it would deprive a party of the right to be confronted by appropriate
pleadings, assert defenses, conduct discovery, and submit contested fact issues
to a judge or jury.  Cadle Co. v.
Castle, 913 S.W.2d 627, 632 (Tex. App.BDallas 1995, writ
denied).  








In this case, a
settlement dispute arose between the parties while the trial court had
jurisdiction.  The plaintiffs were
required to amend their pleadings to assert the claim to enforce the settlement
agreement.  Mantas, 925 S.W.2d at 658; Padilla, 907 S.W.2d at 452.  They did so. 
The trial court determined, after a trial on the merits, that Citgo had
breached the settlement agreement.  The
court ordered the equivalent of specific performance of Citgo=s contractual
obligations to the I-37 South and I‑37 North subclasses.  We conclude that the breach-of-contract claim
to enforce the settlement agreement did not affect the relationships of class
members to each other or to class counsel. 
See De Los Santos, 933 S.W.2d at 495
(citing Pierce Mortuary, 841 S.W.2d at 880).  Once again assuming, without deciding, Citgo=s threshold contention
that an order approving notice to the class of the anticipated judgment on the
breach-of-contract claim is the equivalent of an order amending certification
of the existing class for that cause of action, we conclude that action by a
class to enforce a settlement agreement reached in the underlying case does not
implicate certification of the class.  We
hold that pursuit of a breach-of-contract claim to enforce a settlement
agreement by a class previously certified on the settled claims is not a
fundamental alteration in the nature of the class. 

We turn to Citgo=s argument that an
order approving notice to a Afail-safe@ class effectively
certifies a new settlement class and therefore is immediately appealable under
section 51.014(a)(3).  

                                          The
Assurance of Recovery








Citgo=s threshold premise is
that the notice to the class approved by the May 2002 Order is the
equivalent of a order certifying a Aone-way@ settlement class
whose members have incentive to stay in the class because recovery is assured
by the anticipated judgment.  Citgo is
mistaken in its characterization.  The
distribution proposed by the notice to the class resulted from adjudication on
the merits, not from settlement.  In any
event, as Citgo acknowledges in its reply brief, the supreme court has held
unequivocally that any incentive to stay in a class that might result from a
trial court=s order affects only
the size of the class, not its fundamental nature, and thus is not an order
certifying or refusing to certify the class as required for an interlocutory
appeal.  Bally,
53 S.W.3d at 356.  Whether or not
orders that might create the potential for one‑way intervention are
prohibited, as Citgo claims, the question presented is whether any such
prohibition may be remedied by interlocutory appeal under our statute=s limited
jurisdictional grant. Id.  Whether
or not the trial court=s May 2002 Order
impermissibly created an incentive for potential class members not to opt out,
which is far from clear, it changed nothing about the class itself.  Id. 
We hold that the May 2002 Order approving notice to the class of an
anticipated judgment does not certify or refuse to certify a class, have the
practical effect of doing so, decertify a class, or fundamentally alter the
nature of the class and, hence, is not immediately appealable. 








We next address Citgo=s arguments for
application of the De Los Santos Afundamental alteration@ exception to orders
in class actions that implicate conflicts of interest between the class and
class counsel or between class members.  De
Los Santos, 933 S.W.2d at 495. 

       Class Counsel=s Request for Attorneys= Fees in the
underlying Tort Claims








Citgo contends that a
request by class counsel for attorneys= fees under a common
fund theory creates a conflict of interest between counsel and the class when
the common fund resulted from a judgment on a suit to enforce a settlement
agreement in which attorneys= fees already have
been awarded.  Citgo cites no authority
in support of its characterization of counsel=s fee request as creating a conflict of
interest.  Even if counsel=s fee request
evidences a conflict of interest, which also is far from clear, we have
determined that the May 2002 Order does not certify or refuse to certify a
class, have the practical effect of doing so, decertify a class, or
fundamentally alter the nature of the class and, hence, is not immediately
appealable.  Unlike the circumstance in De
Los Santos, where the supreme court, in holding that the challenged order
fundamentally altered the class by changing the class from opt-out to
mandatory, expressed concern about the possibility of a conflict of interest,
in the present case the asserted conflict of interest is not reflected in an
otherwise appealable order.  De Los
Santos, 933 S.W.2d at 495; Am. Express,
883 S.W.2d at 707.  Assuming, without
deciding, that counsel=s fee application
creates a conflict of interest between the class and its counsel, we hold that
we do not have jurisdiction over the portion of the May 2002 Order
approving notice to the class of counsel=s fee application
because the order does not otherwise certify or refuse to certify the class,
have the practical effect of doing so, decertify the class, or fundamentally
alter the nature of the class.   

                              The Allocation
of the Anticipated Judgment

Citgo also argues that
omission in the notice approved by the May 2002 Order of the Oak Park Triangle
subclass and the proposed distribution of the $5 million to the I‑37 South
and I‑37 North subclasses created a conflict of interest between the
three subclasses.  We already have
determined that exclusion of the Oak Park Triangle subclass from the notice
resulted from Citgo=s buy-out of those
homeowners.  In any event, under the
terms of the original settlement agreement, the Oak Park Triangle subclass did
not share in the $5 million Citgo agreed to pay the I‑37 South and I‑37 North
subclasses.  Moreover, no allocation
between the I‑37 South and I‑37 North subclasses is recited in
the notice approved by the May 2002 Order. 
Rather, the allocation about which Citgo complains is contained in class
counsel=s proposal filed on
September 17, 2002, long after the May 2002 Order approved notice to the class of
distribution of the anticipated judgment. 
We hold that we do not have jurisdiction over the portion of the
May 2002 Order approving notice to the class of the proposed distribution
because the order does not otherwise certify or refuse to certify the class,
have the practical effect of doing so, decertify the class, or fundamentally
alter the nature of the class.   

                                                    CONCLUSION








The certification of
this class action occurred in 1995.  In
the intervening seven years, the class certification was appealed and affirmed,
the case was removed to federal court and remanded back to state court, settlements were reached, claims severed, buy-outs
effectuated, and a settlement breached. 
The case went to trial, and the trial court determined Citgo=s liability, assessed
damages, and awarded attorneys= fees, after which it
approved notice to the remaining class of the resulting judgment.  We do not believe that the statutory
provision for an interlocutory appeal from class certification was ever
intended to permit an eleventh-hour appeal of notice to the class of the pendency
of an adjudicated final judgment.  The
Legislature has articulated carefully which interlocutory orders may be
appealed, and the supreme court with equal care has
applied the legislation only in narrow circumstances.  Bally, 53 S.W.3d at
356.  The May 2002 Order approving
notice to the class, about which Citgo complains, is not one of them.  AWe are bound by that
policy choice.@  Id. at 359.  Citgo=s appeal must await
final judgment, which appears imminent. 
Accordingly, the present attempted appeal is dismissed for want of
jurisdiction.

 

ERRLINDA CASTILLO

Justice

 

Publish.

Tex. R.
App. P. 47.3(b).

 

Opinion delivered and filed

this 12th day of December,
2002.











[1]Retired
Justice Melchor Chavez, assigned to this Court by the
Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov=t
Code Ann. '
75.002 (Vernon 1998).





[2]
The class certification issue was the subject of an interlocutory appeal.  This Court upheld the certification order,
and, after initially granting review, the supreme court
withdrew its order as improvidently granted and dismissed the appeal for want
of jurisdiction.  Amerada Hess Corp.
v. Garza, 973 S.W.2d 667 (Tex. App.BCorpus
Christi 1996), writ dism=d
w.o.j. sub nom., Coastal Corp. v. Garza, 979
S.W.2d 318 (Tex. 1998).