

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-03-00644-CV

OBRA HOMES, INC., ALEX FLORES, AND
DAVID CANTU,                                            Appellants,

v.

RICARDO GONZALEZ AND SANDRA
BARBOUR, ON BEHALF OF THEMSELVES
AND OTHERS SIMILARLY SITUATED,                          Appellees.

On Appeal from the 138th District Court
of Cameron County, Texas.

## NUMBER 13-03-00700-CV

## IN RE OBRA HOMES, INC.

On Petition for Writ of Mandamus

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Chief Justice Valdez**

By an accelerated interlocutory appeal and an accompanying petition for writ of mandamus, appellants/relators, Obra Homes, Inc., Alex Flores, and David Cantu (collectively "Obra Homes"), complain about the trial court's denial of a motion to compel arbitration and the certification of the underlying lawsuit as a class action in favor of appellees/real parties in interest, Ricardo Gonzalez and Sandra Barbour, on behalf of themselves and those similarly situated (collectively "the Gonzalez class"). By two issues in their interlocutory appeal in appellate cause number 13-03-644-CV, Obra Homes contends that the trial court clearly abused its discretion in denying Obra Homes's motion to compel arbitration and by certifying this matter as a class action. In addition, by its petition for writ of mandamus in appellate cause number 13-03-700-CV, Obra Homes makes substantially similar arguments as contained in their interlocutory appeal.

In appellate cause number 13-03-700-CV, we conditionally grant the writ requested. In appellate cause number 13-03-644-CV, we reverse the trial court's class certification order, and we remand for proceedings consistent with this opinion.

## I. BACKGROUND

This dispute pertains to the purchase of a home in Cameron County, Texas. On June 14, 2001, Gonzalez and Barbour contracted to purchase a home from Obra Homes for the purchase price of $73,686. Gonzalez, Barbour, and an Obra Homes representative each signed the underlying contract for the home purchase.

Subsequently, on May 29, 2003, the Gonzalez class filed an original class action petition against Obra Homes, alleging that the underlying contract was defective because Obra Homes neglected to include a disclosure statement that was required by section

27.007 of the Texas Property Code and, therefore, engaged in an unconscionable act and breached a fiduciary duty of good faith and fair dealing owed to the class. *See* TEX. PROP. CODE ANN. § 27.007 (Vernon Supp. 2009).[1] The Gonzalez class further alleged that Obra Homes' failure to include the disclosure statement in the underlying contract entitled the class members to a "civil, statutory penalty of $500," court costs, and reasonable attorney's fees. On June 4, 2003, the Gonzalez class filed a first amended class action petition alleging the same causes of action against Obra Homes but adding language stating that: (1) the members of the class numbered in the thousands and would be impracticable to

---

[1] The version of section 27.007 of the property code in effect at the time of this dispute provided, in relevant part, the following:

> (a) A written contract subject to this chapter must contain next to the signature lines in the contract a notice printed or typed in 10-point boldface type or the computer equivalent that reads substantially similar to the following:
>
>> "This contract is subject to Chapter 27 of the Texas Property Code. The provisions of that chapter may affect your right to recover damages arising from the performance of this contract. If you have a complaint concerning a construction defect arising from the performance of this contract and that defect has not been corrected through normal warranty service, you must provide the notice regarding the defect to the contractor by certified mail, return receipt requested, not later than the 60th day before the date you file suit to recover damages in a court of law. The notice must refer to Chapter 27, Property Code, and must describe the construction defect. If requested by the contractor, you must provide the contractor an opportunity to inspect and cure the defect as provided by Section 27.004, Property Code."
>
> (b) If a contract does not contain the notice required by this section, the claimant may recover from the contractor a civil penalty of $500 in addition to any other remedy provided by this chapter.

Act of May 24, 1999, 76th Leg., R.S., ch. 189, § 8, 1999 Tex. Gen. Laws 663, 666-67, *amended by* Act of June 20, 2003, 78th Leg., R.S., ch. 458, § 2.06, 2003 Tex. Gen. Laws 1703, 1727-28, *amended by* Act of June 15, 2007, 80th Leg., R.S., ch.750, § 2, 2007 Tex. Gen. Laws 1555, 1556, *amended by* Act of June 15, 2007, 80th Leg., R.S., ch. 843, § 4, 2007 Tex. Gen. Laws 1754, 1755-56 (current version at TEX. PROP. CODE ANN. § 27.007 (Vernon Supp. 2009)).

individually join as parties to the action[2]; (2) the questions of law and fact are common and of general interest to the class; (3) Gonzalez and Barbour's claims are typical of the class's claims; (4) Gonzalez and Barbour will fairly and adequately protect the interests of the class as representatives; and (5) class-action treatment of this dispute is necessary to avoid the "risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for the Defendant [Obra Homes]" and to allow "other members not parties to the adjudications to protect their interests." *See* TEX. R. CIV. P. 42.

Obra Homes filed its original answer on June 26, 2003, arguing that the underlying contract compelled the Gonzalez class to submit their claims to arbitration. On July 28, 2003, Obra Homes filed motions to compel arbitration under the Federal Arbitration Act (the "FAA") and to abate the lawsuit pending arbitration. Attached to Obra Homes' motions was an affidavit executed by Larry Contreras, wherein he averred that: (1) at the time of the underlying transaction, Alex Flores and David Cantu were both employees of Obra Homes; and (2) many of the materials used in the construction of the class members' homes were manufactured outside the State of Texas and, thus, Obra Homes "operates in interstate commerce and [the] transactions with the plaintiffs involve interstate commerce."

Also on July 28, 2003, the Gonzalez class filed a motion to certify the class. On September 8, 2003, the class filed a supplemental motion to certify, specifically addressing

---

[2] At the September 22, 2003 hearing, counsel for the Gonzalez class stated that the class consisted of 3,044 members who executed contracts with Obra Homes between September 1, 2000, when the Legislature first required the inclusion of the section 27.007 disclosure statement in residential home purchase agreements, and June 13, 2003. Act of May 24, 1999, 76th Leg., R.S., ch. 189, § 8, 1999 Tex. Gen. Laws 663, 666-67 (amended 2003 and 2007). Counsel further stated that 2,479 of the 3,044 class members bought homes in either Cameron or Hidalgo counties.

the underlying causes of action and the numerosity, commonality, typicality, and adequacy of representation of the class members' claims. *See id.* at R. 42(a).

On September 22, 2003, the trial court conducted a hearing on Obra Homes's motion to compel arbitration and the Gonzalez class's request for class certification. On the day of the hearing, the class filed a fourth amended class action petition, revising their causes of action against Obra Homes. In addition to their causes of action for breach of fiduciary duty and for violations of section 27.007 of the property code, the class asserted that Obra Homes had breached the underlying contract and was negligent in failing to include the section 27.007 disclosure statement. The class further asserted that: "Defendants [Obra Homes] included arbitration agreements that were ambiguous, contracts of adhesion, unconscionable, resulted from uneven economic power, were against public policy, and were procured by fraud in the inducement of the arbitration agreements. Furthermore, there was no mutuality of consideration regarding such arbitration agreements and burdensome costs."

On October 2, 2003, the trial court entered an order denying Obra Homes's motion to compel arbitration. Specifically, the trial court noted the following in its order:

> In reaching such finding[,] the Court finds that the penalty/fine provision of the Residential Construction Liability Act /[]Texas Property Code (§[]27.007) upon which the Plaintiffs [the Gonzalez class] bring suit is outside the scope of the arbitration agreement. Moreover, the arbitration agreement included in the Purchase Agreements with Plaintiffs is a contract of adhesion and unconscionable. The Court further finds that the arbitration agreement is not supported by mutual consideration and based on illusory promises of the Defendant Obra Home[s], Inc. The Court further finds that the enforcement of the arbitration agreement would be unduly costly and violate public policy considerations.

The next day, the trial court entered an order granting the Gonzalez class's request for class certification and making numerous findings pertaining to the certification of the class.

On October 17, 2003, Obra Homes filed their notice of accelerated appeal of the trial court's October 2 and 3, 2003 orders in appellate cause number 13-03-644-CV. Shortly thereafter, Obra Homes filed a petition for writ of mandamus in appellate cause number 13-03-700-CV, also challenging the trial court's October 2 and 3, 2003 orders.

However, while this dispute was pending in this Court, Obra Homes notified us of the bankruptcy filing of a named party—Alex Flores. As a result, the causes were abated. *See* 11 U.S.C. § 362 (setting out various acts subject to the automatic stay associated with a bankruptcy filing); *see also* TEX. R. APP. P. 8. The parties filed a joint motion to reinstate this dispute on March 30, 2010, asserting that the automatic stay in Flores's bankruptcy proceeding had been lifted and including a certified copy of the order discharging Flores's debts. *See* TEX. R. APP. P. 8.3(a). On April 16, 2010, this Court granted the parties' joint motion to reinstate.

## II. PRELIMINARY MATTERS

In the instant case, Obra Homes challenges the trial court's: (1) refusal to compel the parties to arbitration under the FAA; and (2) certification of the Gonzalez class. Generally, "[a] party may not appeal an interlocutory order unless authorized by statute." *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001) (citing *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex. 1985) (per curiam)). Section 51.014(a)(3) of the civil practice and remedies code provides that a party may appeal from an interlocutory order certifying or refusing to certify a class in a suit brought under rule 42 of the rules of civil procedure. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(3) (Vernon 2008); *see* TEX. R. CIV. P. 42. Because section 51.014(a)(3) provides Obra Homes with an adequate remedy on appeal regarding the trial court's interlocutory order certifying the Gonzalez class, we will not analyze their issues pertaining to the class certification within

6

the context of their petition for writ of mandamus. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(3); *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (stating that mandamus will issue to correct a clear abuse of discretion for which the remedy by appeal is inadequate); *Bally Total Fitness Corp.*, 53 S.W.3d at 352.

However, section 51.014 of the civil practice and remedies code does not provide for the appeal of an interlocutory order refusing to compel parties to arbitration under the FAA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014. Traditionally, Texas courts have handled such complaints via mandamus. *See In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *Hawthorne Townhomes, L.P. v. Branch (In re Hawthorne Townhomes, L.P.)*, 282 S.W.3d 131, 137 (Tex. App.–Dallas 2009, no pet.) ("The denial of arbitration under the Federal Arbitration Act cannot be appealed.") (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992)); *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.–San Antonio 2006, orig. proceeding); *see also In re HEB Grocery Co., L.P.*, 299 S.W.3d 393, 397 (Tex. App.–Corpus Christi 2009, orig. proceeding) ("When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy."). Therefore, we will analyze the trial court's order denying Obra Homes's motion to compel arbitration within the context of its petition for writ of mandamus, and we will analyze Obra Homes' issues pertaining to the certification of the Gonzalez class in its interlocutory appeal.

### III. APPELLATE CAUSE NUMBER 13-03-700-CV

By their petition for writ of mandamus, Obra Homes argues that the trial court clearly abused its discretion in denying its motion to compel arbitration because the underlying arbitration agreement is valid and the Gonzalez class's claims are within the scope of the arbitration agreement. In addition, Obra Homes asserts that the class's various defenses

7

to the arbitration agreement are not supported by competent evidence or legal authority. The class responds by arguing that: (1) the FAA does not apply to the arbitration agreement; and (2) the trial court did not abuse its discretion in finding that the underlying contract was unconscionable, not supported by consideration, and in violation of public policy.

## A. The FAA

The FAA applies to transactions that involve commerce. *See* 9 U.S.C. § 2. "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires commerce to be involved or affected. *See L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.)*, 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding); *In re Merrill Lynch Trust Co., FSB*, 123 S.W.3d 549, 553 (Tex. App.–San Antonio 2003, orig. proceeding).

The FAA may govern a written arbitration clause enforced in Texas state court if the parties have expressly contracted for the FAA's application. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam). When parties have designated the FAA to govern their arbitration agreement, their designation should be upheld. *See id.* at 606 & n.3; *In re Brock Specialty Servs., Ltd.*, 286 S.W.3d 649, 653 (Tex. App.–Corpus Christi 2009, orig. proceeding); *see also In re Int'l Bank of Commerce*, No. 13-07-00693-CV, 2008 Tex. App. LEXIS 519, at **16-17 (Tex. App.–Corpus Christi Jan. 18, 2008, orig. proceeding [mand. denied]) (mem. op.).

## B. Mandamus Relief

As noted earlier, to be entitled to mandamus relief, a petitioner must show that the

8

trial court clearly abused its discretion and that the relator has no adequate remedy by appeal.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135-36; *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding).  Under this standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo.  *Brainard v. State*, 12 S.W.3d 6, 30 (Tex. 1999); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (stating that the reviewing court may not substitute its judgment for that of the fact finder with respect to the resolution of factual issues or matters within the fact finder's discretion).  A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner, when it acts without reference to guiding rules and principles, or when it clearly fails to analyze or apply the law correctly.  *See Walker*, 827 S.W.2d at 840; *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

## C.      The Validity and Scope of an Arbitration Agreement

A party seeking to compel arbitration by writ of mandamus must:  (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding).  "Whether a valid arbitration agreement exists is a legal question subject to de novo review."  *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding).  We generally apply state-law principles governing the formation of contracts when determining the validity of agreements to arbitrate which are subject to the FAA.  *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  If the trial court finds that there is a valid agreement to arbitrate, then the burden shifts to the party opposing arbitration to prove his defenses.  *J.M.*

*Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, the court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts regarding an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id.* at 753-54; *see D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

In the instant case, the underlying contract contained the following provision with respect to arbitration:

> This agreement is subject to arbitration under the Federal Arbitration Act. Subject to the provisions set forth below, all claims, demands, disputes, controversies[,] and differences that may arise between the parties to this Agreement (including the officers, agents[,] and employees of each party) of whatever nature or kind, including, without limitation, disputes: (1) as to events, representations, or omissions, which predate this agreement[;] (2) arising out of this agreement; (3) relative to the construction contemplated, by this agreement; and/[o]r (4) as to repairs or warranty claims arising after the construction is completed, shall be submitted to binding arbitration and such arbitration shall be governed by the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1[,] et seq. Either party may, within one year after an arbitration award, apply to the U.S. District Court for the Western District of Texas to confirm the award. The forwarding of a written demand for arbitration shall toll the running of any applicable statute of limitations for the matter to be arbitrated. As between the Purchaser [the Gonzalez class] and

10

the Seller [Obra Homes], this clause shall control over any dispute resolution provision to the contrary in the Limited Warranty Program. This agreement to arbitrate shall survive closing, and shall survive cancellation of this purchase agreement. Arbitration shall be conducted through [the] American Arbitration Association.

To the side of this provision, both parties initialed the provision underneath language stating "Binding Arbitration."[3] The contract also contained the following provision, entitled "Seller's Option to Cancel," which was also initialed by both parties:

Notwithstanding the foregoing, if for any reason, a bone fide dispute should arise between Purchaser and Seller prior to closing, and if such bona fide dispute cannot be resolved to their mutual satisfaction, Seller[,] at its sole option[,] may either submit the dispute to binding arbitration or may terminate this agreement by written notice to the Purchaser prior to closing. If Seller terminates the purchase agreement, Seller shall return to Purchaser the Earnest Money paid to Seller to bind the contract, and any cash deposits paid by Purchaser for any option, selection or change order, whether refundable or not.

The trial court, in reviewing the provisions of the contract, concluded that the arbitration provisions did not pertain to the claims alleged in the underlying lawsuit and, thus, denied Obra Homes's motion to compel arbitration. Specifically, the trial court noted that:

THE COURT: —you're asking me, I guess what you're telling me that there's a legal requirement or statute that says this has to take place [inclusion of the notice provision in the sales contract], and then you're trying to impede that to the buyers saying, "Well, you all are subject to that,

---

[3] The record contains affidavits executed by Gonzalez and Barbour both averring that:

Attached is a copy of the Purchase Agreement that I signed with Obra Homes, Inc. At no time did anyone at Obra Homes, Inc. explain the arbitration agreement to me or the ramifications of such agreement. They simply told me to sign and initial.

. . . .

I was unaware at the time I signed the Purchase Agreement that the Defendant Obra Homes, Inc. failed to include a disclosure statement setting forth my rights. At no time did anyone at Obra Homes, Inc. advise me of any of such rights.

11

also, even though it does not involve the buyers." If they really wanted to say, "Well, give me my $500 because you didn't do this." I don't see where you could say it was the contract between the buyers and Obra.

. . . .

THE COURT: You're talking about any claims, but I think [sic]. I've seen so many contractors with home repairs, or builders—but this is kind of unique, I never heard that argument, that it [the arbitration provision] goes beyond the contract itself.

. . . .

THE COURT: —I didn't mean to interrupt, but it kind of dawned on me pretty early, or quickly, it seems like arbitration is not appropriate in this case, and it shouldn't be appropriate under the circumstances.

I mean, if it's something dealing with a breach of contract, or just dealing with the contract of individuals, then, of course, arbitration is appropriate. And I know that our courts, our state favors arbitration over everything else. But[,] under the circumstances, I have been told or advised that arbitration is not appropriate, and I am not going to require that they [the Gonzalez class] go to arbitration. So your request is denied.

"'A party cannot be required to arbitrate unless it has agreed to do so.'" *Trico Mar. Servs., Inc. v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 548 (Tex. App.–Houston [1st Dist.] 2002, no pet.) (quoting *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205 (Tex. App.–Houston [1st Dist.] 1997, orig. proceeding)). "The parties' agreement to arbitrate must be clear. In this determination, Texas contract law applies." *Id.* (citations omitted). "Construction of an unambiguous contract is a question of law." *Id.* (citing *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999)). "This Court may not expand upon the terms of the contract or tolerate a liberal interpretation of it by reading into a voluntary, consensual agreement to arbitrate when one otherwise does not

12

exist." *Bates v. MTH Homes-Tex., L.P.*, 177 S.W.3d 419, 422 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (citing *In re ACG Cotton Mktg., L.L.C.*, 985 S.W.2d 632, 633 (Tex. App.–Amarillo 1999, orig. proceeding); *Escajeda v. Cigna Ins. Co.*, 934 S.W.2d 402, 407 (Tex. App.–Amarillo 1996, no writ) ("Before a contract can be read as delegating to third-parties that power [as sole arbiters of reasonableness and necessity of all future medical expenses], the word evincing the delegation must be express, plain, clear, and certain."); *Seale v. Roy M. Mitchell Contracting Co.*, 321 S.W.2d 149, 151 (Tex. Civ. App.–Austin 1959, writ ref'd) (finding "no clear incorporation of the arbitration provisions of the principal contract into the subcontract between" the parties)).

"Although an arbitration agreement does not have to assume any particular form, the language of the agreement must clearly indicate the intent to arbitrate." *Id.* (citing *Massey v. Galvan*, 822 S.W.2d 309, 316 (Tex. App.–Houston [14th Dist.] 1992, writ denied)). "Without an agreement to arbitrate, arbitration cannot be compelled." *Id.* (citing *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) (orig. proceeding)).

In reviewing the plain language of the underlying contract and considering that the parties signed the underlying contract, it is clear to this Court that the parties intended for any claims or disputes amongst the parties to be submitted to binding arbitration; thus, we conclude that a valid agreement to arbitrate exists. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *see also Bates*, 177 S.W.3d at 422; *Trico Mar. Servs., Inc.*, 73 S.W.3d at 548. However, the crux of this issue is the scope of the terms "all claims, demands, disputes, controversies[,] and differences," as contained in the arbitration clause of the contract. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. Obra Homes argues that these terms encompass the Gonzalez class's claims pertaining to Obra Homes' apparent failure to include the statutorily required section 27.007 disclosure in its sales

13

contracts. On the other hand, the class asserts that the above-mentioned terms do not encompass the underlying claims; therefore, arbitration cannot be compelled.

The supreme court, in analyzing the scope of arbitration clauses, has held that:

> whether claims seek a direct benefit from a contract turns on the substance of the claim, not artful pleading. We said that a claim is brought in contract if liability arises from the contract, while a claim is brought in tort if liability is derived from other general obligations imposed by law.

*In re Int'l Profit Assocs.*, 274 S.W.3d 672, 677 (Tex. 2009) (per curiam) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131-32 (Tex. 2005)); *see In re FirstMerit Bank, N.A.*, 52 S.W.3d at 755 ("[A] litigant who sues based on a contract subjects him or herself to the contract's terms.").

Here, the factual allegations made by the Gonzalez class are substantially related to the underlying contracts. *See Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 885 (Tex. App.–Beaumont 2009, no pet.) ("Generally, if the facts alleged in a claim 'touch matters that are covered by, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract that contains the arbitration agreement, the claims are arbitrable.'") (quoting *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 366 (Tex. App.–Beaumont 2008, orig. proceeding) and citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754; *In re Nestle USA-Bev. Div., Inc.*, 82 S.W.3d 767, 776 (Tex. App.–Corpus Christi 2002, orig. proceeding); *Hou-Scape, Inc.*, 945 S.W.2d at 205-06). In fact, the substance of the class's causes of action is that Obra Homes neglected to include the disclosure paragraph in its sales contracts, as mandated by section 27.007 of the property code. *See* TEX. PROP. CODE ANN. § 27.007. Moreover, counsel for the class admitted at the September 22, 2003 hearing that the composition of the class was determined by the number of individuals that had entered into contracts with

14

Obra Homes during the time period in which the section 27.007 disclosure statement was not provided. Thus, the class's claims arose from the contract and must be arbitrated. *See In re Weekley Homes, L.P.*, 180 S.W.3d at 132; *see also Tex. Petrochemicals LP*, 301 S.W.3d at 885-86.

Furthermore, the language contained in the arbitration provisions is very broad, encompassing "all claims, demands, disputes, controversies[,] and differences that may arise between the parties to this Agreement (including the officers, agents[,] and employees of each party) of whatever nature or kind" and surviving closing. *See In re First Tex. Homes, Inc.*, 120 S.W.3d 868, 870 (Tex. 2003) (orig. proceeding) (per curiam) (holding that the FAA applies when the parties' contract included an arbitration provision that applied to "all disputes between [them] . . . arising out of this Agreement or other action performed . . . by [First Texas]"); *see also Emerald Tex. Inc. v. Peel*, 920 S.W.2d 398, 403 (Tex. App.–Houston [1st Dist.] 1996, no writ) ("If . . . the [arbitration] clause is broad, arbitration should not be denied unless it can be said with positive assurance that the particular dispute is not covered."). As mentioned earlier, we are to resolve any doubts about whether claims are arbitrable under the FAA in favor of arbitration. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753; *see also In re First Tex. Homes, Inc.*, 120 S.W.3d at 870. Therefore, based on the foregoing, we conclude that the Gonzalez class's claims are within the scope of the arbitration agreement. Given that, we must now analyze the various defenses to arbitration raised in the trial court by the class. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227.

D.    **The Gonzalez Class's Defenses to the Arbitration Agreement**

As stated earlier, the trial court, in its October 2, 2003 order, concluded that the arbitration agreement is: (1) a contract of adhesion and unconscionable; (2) not supported

15

by mutual consideration; (3) illusory; (4) unduly costly; and (5) in violation of public policy considerations.

### 1. Contract of Adhesion & Unconscionability

In the trial court, the Gonzalez class argued that the arbitration provisions are procedurally and substantively unconscionable because the contracts were unfair and contracts of adhesion; that is, they were required to execute the contracts in order to purchase homes from Obra Homes. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678; *see also In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 370-71 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding) (defining a contract of adhesion as a contract in which one party has absolutely no bargaining power or ability to change the contract terms). Adhesion contracts are not necessarily unconscionable, and there is nothing per se unconscionable about arbitration provisions. *In re AdvancePCS Health, L.P.*, 172 S.W.3d at 608; *see In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex. 1999) (orig. proceeding). One party's refusal to contract with another absent an arbitration provision does not establish procedural unconscionability. *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (orig. proceeding) (per curiam); *see In re Halliburton Co.*, 80 S.W.3d at 572 (holding that an arbitration provision was not procedurally unconscionable because an employer made a "take it or leave it" offer to an at-will employee and stating that a party seeking to avoid an arbitration clause must prove more than the contract was offered on a take it or leave it basis). Under the FAA, unequal bargaining power does not establish grounds for defeating an agreement to arbitrate absent a well-supported claim that the clause resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract. *In re AdvancePCS Health, L.P.*, 172 S.W.3d at 608.

On the other hand, the test for substantive unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the arbitration clause is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678; *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757 (stating that unconscionability principles are applied to prevent unfair surprise or oppression).

In arguing that the arbitration agreement was procedurally unconscionable, the Gonzalez class stated that the negotiation process was oppressive and unfair because Obra Homes included its binding arbitration clause in the contract while failing to include the statutorily mandated section 27.007 disclosure statement which addresses how homeowners must notify a home builder of construction defects. *See* TEX. PROP. CODE ANN. § 27.007. The class also argues that Obra Homes' failure to include the section 27.007 disclosure statement caused the class "to unknowingly waive certain statutory rights, remedies[,] and obligations by entering [into] the Agreement[,] which contained a binding arbitration clause."

The class, however, does not adequately explain which statutory rights, remedies, and obligations would be waived by the enforcement of the arbitration clause. As it currently reads, the contract merely requires the class to enforce their rights in arbitration; it does not strip the class of its right to enforce the provisions of chapter 27 of the property code. *See generally High Valley Homes, Inc. v. Fudge*, No. 03-01-00726-CV, 2003 Tex. App. LEXIS 3273, at *7 (Tex. App.–Austin Apr. 17, 2003, no pet.) (mem. op.) ("[W]e reject the proposition that the RCLA [Residential Construction Liability Act as defined in chapter 27 of the property code] displaces otherwise binding agreements entered into by the

17

parties. Had the legislature intended the mediation provided for in the RCLA to preempt private contracts and other statutory ADR [alternative dispute resolution] schemes, it could have plainly said so. We hold that the RCLA does not preclude parties to a residential construction contract from agreeing to another form of alternative dispute resolution . . . ." (footnotes omitted)). Based on the foregoing, we cannot say that the arbitration provisions are procedurally unconscionable.

With respect to substantive unconscionability, the Gonzalez class contends that the arbitration clause is unfair and would require them to violate the law—the Residential Construction Liability Act—as it pertains to the resolution of construction defects. However, in making this argument, the class does not direct us to any provisions of the Residential Construct Liability Act or explain how these provisions would be violated if the arbitration clause were enforced. *See id.* Moreover, to the extent that the class argues that there was unequal bargaining power and that Obra Homes failed to explain the arbitration clause to its customers, we are to presume that parties who have read and signed an arbitration agreement know its contents. *See Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). Unequal bargaining power, by itself, does not establish grounds for defeating an agreement to arbitrate under the FAA. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90-91 (Tex. 1996) (orig. proceeding) (per curiam) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). We cannot say that the arbitration provisions are substantively unconscionable; therefore, we conclude that the Gonzalez class has failed to prove its contract-of-adhesion and unconscionability defenses.[4]

---

[4] In *Emerald Texas, Inc. v. Peel*, the Houston First Court of Appeals, in analyzing arguments similar to those made in the instant case, stated:

## 2. The Class's Illusory and Mutual Consideration Defenses

An arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *see also In re HEB Grocery Co., L.P.*, 299 S.W.3d 393, 399 (Tex. App.–Corpus Christi 2009, orig. proceeding) (citing *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994); *Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex. App.–San Antonio 1998, pet. denied)); *D.R. Horton, Inc. v. Brooks (In re D.R. Horton)*, 207 S.W.3d 862, 867 (Tex. App.–Houston [14th Dist.] 2006, no pet.) ("An illusory promise is one that fails to bind the promisor because he retains the option of discontinuing performance *without notice*.") (emphasis added).

The supreme court has held that "[i]n the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS Health, L.P.*, 172 S.W.3d at 607. However, "when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *Id.* (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757). In *In re AdvancePCS Health, L.P.*, the supreme court analyzed an arbitration clause similar to the one in this case and stated the following:

> *Moreover, the arbitration clause here is not illusory even if considered alone.* The pharmacies' point to the following provisions as rendering the contract illusory:

---

> The circumstances of this sale are routine. To declare them unconscionable would be to outlaw arbitration per se in the large majority of residential real estate sales contracts. Holding this provision unconscionable based on this evidence would negate the public policy in favor of arbitration. We hold there is no evidence to support . . . unconscionability.

920 S.W.2d 398, 402-03 (Tex. App.–Houston [1st Dist.] 1996, no writ). The *Peel* case involved, among other things, allegations of negligence, breach of warranty, violations of the Texas Deceptive Trade Practices Act, and the unconscionability of an arbitration clause contained in the earnest money contract covering the construction of a new home. *Id.* at 400-01.

> 1.3 Amendments. From time to time AdvancePCS may amend this Agreement . . . by giving notice to Provider of the terms of the amendment and specifying the date the amendment becomes effective, which shall not be less than thirty (30) days after the notice.
>
> 8.3 Immediate Termination Rights. If . . . Provider fails to perform or breaches any terms or provisions of the AdvancePCS Documents, AdvancePCS may terminate this Agreement effective upon notice to Provider. This termination right is in addition to any and all other rights and remedies that may be available to AdvancePCS under this Agreement or at law or equity.
>
> 8.5 Provider Event of Default and AdvancePCS Remedy and Other AdvancePCS Rights. . . . Nothing in this Agreement shall limit, and the parties agree that in addition to the rights specified in this Section, Advance PCS shall retain, any and all rights AdvancePCS may have at law, equity or under this Agreement.

*Id.* (emphasis added).

In support of its argument that the arbitration provisions were not supported by mutual consideration, the Gonzalez class cites to the El Paso Court of Appeals' decision in *In re Jobe Concrete Products, Inc.*, No. 08-02-00175-CV, 2003 Tex. App. LEXIS 6582, at **6-7 (Tex. App.–El Paso July 31, 2003, orig. proceeding) (mem. op.). In that case, the El Paso Court of Appeals concluded that there was no valid agreement to arbitrate workers' compensation claims because the arbitration agreement was not supported by consideration and stated that:

> Mutual promises to give up the right to litigate can constitute consideration supporting an agreement to arbitration. *In re Jebbia*, 26 S.W.3d 753, 758 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding).
>
> . . . .
>
> The Relator expressly agreed that, in exchange for the employee's acquiescence to arbitrate, it would submit all claims covered by the policy to arbitration. However, the Relator retained the right to amend, modify, or terminate the plan at any time. The employee does not have any right to amend or modify or alter the plan. Furthermore, the employee is not in any position to challenge the employer's decision. The Plan provides that the "Administrator has discretionary and final authority to interpret and implement

20

the provisions of the Plan, including, but not limited to, correcting any defect, reconciling any inconsistency and supplying any omission, and making any and all determinations that may impact a claim."  As with the right to termination, the employee has no right to challenge the decisions of the Employer.  Unlike in cases such as *Jebbia*, where the court found that the language of the parties created a mutual promise to forego the right to a jury trial which could not be unilaterally rescinded by either party; in the instant case[,] the language of the agreement created mutual promises by both to forego their right to a jury trial which could be terminated or altered by the Employer with or without the consent of the employee. . . .  For this reason, we hold that the arbitration agreement in this case is not supported by consideration and, therefore, is not a valid agreement.

*Id.* at **9-10.

We disagree with the Gonzalez class's assertion that the arbitration clause is not supported by mutual consideration.  First, we note that the arbitration agreement is not a separate contract but, rather, a part of the broader sales contract.  *See id.*; *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757.  Second, we cannot say that Obra Homes did not provide any consideration for the contract and, specifically, the arbitration provisions.  In fact, the Gonzalez class members each received houses, as well as other rights appertaining to the houses, as consideration for the contract.  *See Peel*, 920 S.W.2d at 402 (holding that "[t]here is no requirement that a separate identifiable consideration be segregated and attributable to the arbitration provision; it was part of the entire bundle of rights the Peels acquired, along with the house")[5]; *see In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757-58 ("[A]n arbitration clause does not require mutuality of obligation, so long as the underlying contract is supported by adequate consideration."); *see also Labidi v. Sydow*, 287 S.W.3d 922, 926 (Tex. App.–Houston [14th Dist.] 2009, orig. proceeding).

While we recognize that the contract, if viewed in isolation, appears to be illusory

---

[5] Obra Homes argues that even if this Court were to find that the arbitration provisions allow for it to unilaterally cancel the contract, the right is very narrow and inapplicable in this case because the transaction closed and both parties are now bound to arbitration.

in that Obra Homes retained the right to arbitrate or terminate the contract if disputes with customers could not be resolved to everyone's satisfaction. However, we note that the contract requires Obra Homes to provide written notice of its intent to customers, and it must refund all earnest money and cash deposits before exercising this right. This means that Obra Homes had to provide customers with some consideration—written notice and a refund of all money paid—in exchange for this right. *See Brooks*, 207 S.W.3d at 867. Given this, and the fact that the entire contract is supported by consideration, we do not believe that the contract is illusory. *See id.* Therefore, based on the foregoing, we conclude that Gonzalez has failed to prove that the arbitration agreement is not supported by consideration and is illusory.

### 3. Arbitration Costs

The party resisting arbitration based on assertions of burdensome arbitration costs must establish the likelihood that arbitration would be prohibitively expensive. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 81 (2000); *see also In re MHI P'ship, Ltd.*, No. 14-07-00851-CV, 2008 Tex. App. LEXIS 4053, at *17 (Tex. App.–Houston [14th Dist.] May 29, 2008, orig. proceeding) (mem. op.).

> Without more, the possibility that a party may have to share in the payment of the arbitrators' fees is insufficient to invalidate an arbitration agreement. When a party fails to specify excessive arbitration costs, and relies instead on speculation that the party will be burdened with prohibitive costs, a court is not allowed to invalidate the arbitration agreement.

*In re MHI P'ship, Ltd.*, 2008 Tex. App. LEXIS 4053, at **17-18 (citing *Am. Life Ins. Co. v. Orr*, 294 F.3d 702, 712 (5th Cir. 2002)). Furthermore, the United States and Texas Supreme Courts have held that a schedule of the American Arbitration Association's usual fees is not enough to establish that arbitration fees are unduly burdensome and costly. *See Green Tree*, 531 U.S. at 90 n.6; *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d at

757.

In support of its argument that arbitration costs are unduly burdensome and, thus, the arbitration clause should not be enforced, the Gonzalez class provided the trial court with a listing of rules and procedures from the American Arbitration Association's website, which includes a listing of the estimated costs of arbitration. The class asserts that the charges to arbitrate this case "would be, at a minimum $700," which the class argues is unfair given that the statutory civil penalty involved in this case only allows for the recovery of $500 per claimant. *See* TEX. PROP. CODE ANN. § 27.007(b). However, in their pleadings, the class uses this argument to support their contention that the class should be certified, rather than to invalidate the arbitration agreement. Furthermore, the class did not argue that the costs of arbitration were unduly burdensome to the trial court at the September 22, 2003 hearing. Because the class only included a schedule of the American Arbitration Association's usual fees for arbitration, we conclude that the class has not adequately demonstrated that the costs of arbitration are unduly burdensome so as to invalidate the arbitration agreement. *See Green Tree*, 531 U.S. at 90 n.6; *see also In re U.S. Home Corp.*, 236 S.W.3d at 764; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757.

### 4. Public Policy Considerations

In addition, the Gonzalez class argues that the arbitration clause violates public policy in that: "(1) class members will be discouraged from pursuing their legal remedies because of the expense involved in arbitration and the amounts involved in each separate case; [and] (2) most class members would likely remain unaware of their entitlement to $500 excluding attorneys' fees." We have already held that the class has failed to establish that the costs of arbitration are unduly burdensome. Therefore, we find the class's first public policy argument unpersuasive. With respect to their second public policy

23

argument, the class does not cite any authority demonstrating that a class member's lack of awareness of a statutory remedy somehow invalidates an arbitration agreement. Furthermore, the class ignores the fact that the federal policy embodied in the FAA favors agreements to arbitrate. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753; *see also Tipps*, 842 S.W.2d at 268 ("Arbitration has been sanctioned in Texas since at least the time of our first state constitution. The public policy of both our state and federal governments favors agreements to resolve legal disputes through such voluntary settlement procedures.") (citations omitted). We conclude that this defense is meritless.

Because we have held that: (1) the arbitration provisions are valid; (2) the claims brought by the Gonzalez class were within the scope of the arbitration agreement; and (3) the class failed to satisfy their burden of proving their affirmative defenses, we conclude that the trial court abused its discretion in failing to compel arbitration. "A party denied the right to arbitrate under the FAA is entitled to mandamus relief." *In re AdvancePCS Health, L.P.*, 172 S.W.3d at 608 (citing *In re Wood*, 140 S.W.3d 367, 370 (Tex. 2004) (per curiam)).

## IV. APPELLATE CAUSE NUMBER 13-03-644-CV

By their interlocutory appeal, Obra Homes contends that the trial court abused its discretion in certifying the Gonzalez class. The Gonzalez class argues that there is sufficient evidence in the record to satisfy the class certification requirements codified in rule 42 of the rules of civil procedure. *See generally* TEX. R. CIV. P. 42.

## A. Standard of Review and Applicable Law

Although we review a trial court's decision to certify a class for abuse of discretion, we do not indulge every presumption in favor of the trial court's decision. *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205-06 (Tex. 2007); *see Harry Schein, Inc. v. Stromboe*,

24

102 S.W.3d 675, 691 (Tex. 2002). Rather, "actual conformance with rule 42 is indispensable." *Stonebridge Life Ins. Co.*, 236 S.W.3d at 206; *see* TEX. R. CIV. P. 42. Compliance may not be presumed—it must be apparent from the record and the trial court's order. *Tex. S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 232 (Tex. App.–Corpus Christi 2008, no pet.). A trial court abuses its discretion when ruling on class certification if it does not properly apply the law to the undisputed facts, acts arbitrarily or unreasonably, or rules upon factual assertions not supported by the record. *Methodist Hosp. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex. App.–Corpus Christi 1998, no pet.).

To comply with rule 42 of the rules of civil procedure, the party seeking class certification must meet four initial prerequisites: (1) numerosity—"the class is so numerous that joinder of all members is impracticable"; (2) commonality—"there are questions of law or fact common to the class"; (3) typicality—"the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequate representation—"the representative parties will fairly and adequately protect the interests of the class." TEX. R. CIV. P. 42(a). The numerosity requirement, in particular, "is not based on numbers alone." *Tall*, 972 S.W.2d at 898. Instead, we look to whether joinder of all class members is practicable in light of the size of the class and factors such as judicial economy, the nature of the action, geographical location of class members, and the likelihood that class members would be able to prosecute individual lawsuits. *Id.*

The plaintiff bears the burden to establish the right to proceed as a class. *Id.* at 897. We acknowledge that the party seeking class certification need not "prove a prima facie case or make an extensive evidentiary showing to meet the requirements" of rule 42. *See Lebron v. Citicorp Vendor Fin., Inc.*, 99 S.W.3d 676, 679 (Tex. App.–Eastland 2003, no pet.). The party may "rely on pleadings and other materials that would not be admissible

25

at trial." *Id.* However, the supreme court nonetheless requires the trial court to go beyond the mere pleadings to "make a meaningful determination of the certification issues." *Sw. Ref. Co., Inc. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000) (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)).

## B.      The *Green Tree Financial Corp. v. Bazzle* Decision

Obra Homes contends that the United States Supreme Court's decision in *Green Tree Financial Corp. v. Bazzle* dictates reversal of the trial court's order certifying the Gonzalez class. *See* 539 U.S. 444, 451 (2003). In *Bazzle*, the parties agreed to submit to an arbitrator "all disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract." *Id.* In analyzing this language, the United States Supreme Court, while recognizing a few "gateway matters" that are left to the courts, not arbitrators, to decide, concluded that the broad arbitration agreement provided that an arbitrator should decide the issue of class certification.[6] *Id.* at 451-52. The *Bazzle* court further acknowledged that the relevant question was what kind of arbitration proceeding the parties agreed to, which is also the relevant question in the instant case. *See id.* at 452.

## C.      Discussion

As previously noted, the relevant provisions of the contract provide that: "all claims, demands, disputes, controversies[,] and differences that may arise between the parties to this Agreement (including the officers, agents[,] and employees of each party) of whatever nature or kind" must be arbitrated under the FAA. The arbitration clause in the present

---

[6] The *Bazzle* court recognized the following as "gateway matters" which necessitate court intervention: "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). These "gateway matters" correspond with our analysis of the validity and scope of the arbitration agreement. *See id.*; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding).

26

case is strikingly similar to the one analyzed by the *Bazzle* court. *See id.* at 451. Therefore, in light of the *Bazzle* decision, and because we have already concluded that the arbitration agreement at issue in this case is valid and encompasses all claims, demands, and disputes, we hold that the trial court abused its discretion in certifying the Gonzalez class. *See id.* at 451-52; *Autonation USA Corp. v. Leroy (In re AutoNation USA)*, 105 S.W.3d 190, 202 (Tex. App.–Houston [14th Dist.] 2003, orig. proceeding) (concluding that, because the claims of the putative class members were subject to arbitration, the trial court erred in certifying the class); *see also Stonebridge Life Ins. Co.*, 236 S.W.3d at 205-06; *Harry Schein, Inc.*, 102 S.W.3d at 691 (Tex. 2002); *Tall*, 972 S.W.2d at 898. Pursuant to the arbitration agreement, the certification of the Gonzalez class is within the discretion of the arbitrator, not the court. *See Bazzle*, 539 U.S. at 451-52. Accordingly, we sustain Obra Homes' issue regarding the trial court's class certification order.

## V. Conclusion

In sum, we conditionally grant the petition for writ of mandamus in appellate cause number 13-03-700-CV and direct the trial court to grant Obra Homes' motion to compel arbitration and order the parties to arbitration. This writ will issue only if the trial court fails to act in accordance with this opinion. With respect to appellate cause number 13-03-644-CV, we reverse the trial court's class certification order, and we remand for proceedings consistent with this opinion.

_____
ROGELIO VALDEZ,
Chief Justice

Delivered and filed the
3rd day of June, 2010.

27